UNITED STATES of America,
Appellee,

v.

Charles TOURINE et ano., Defendants,

and

Leonard Burtman and Benedict Himmel,
Defendants-Appellants.

No. 867, Docket 34708.

United States Court of Appeals,
Second Circuit.

Argued June 19, 1970.

Decided July 29, 1970.

Herbert M. Levy, New York City (Schwartz, Schindler & Levy, New York City on the brief), for appellants.

Richard A. Givens, Asst. U. S. Atty., Southern District of New York (Whitney North Seymour, Jr., U. S. Atty., and James W. Brannigan, Jr., Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before ANDERSON and FEINBERG, Circuit Judges, and MacMAHON, District Judge.*

ANDERSON, Circuit Judge:

Two shipments of goods, which were imported into the United States from Denmark by Pacific Coast Distributors, a company owned by defendant Leonard Burtman, were invoiced as "earthenware cups and saucers" but were actually pornographic booklets. The first shipment, containing 15 cases, arrived in New York on December 18, 1967, and, pursuant to prior arrangements made by Burtman, was delivered and stored under the supervision of the defendant Himmel in a building occupied by the printing business of Morris Drucker. The storage there was terminated after three or four days, however, when the true contents of the crates was discovered by Drucker's business partner, one Kehyaian, who ordered that the material immediately be removed. The defendant Himmel oversaw the removal of the 15 cases from Drucker's building.

The second shipment, containing 22 cases, arrived in New York on April 30, 1968. Although destined for the S. & G. Speedy Transport Co., it never left the docks, because it was seized by customs agents when one of the crates was accidentally dropped and broken open.

The incident on the docks, which resulted in the seizure, gave rise to a series of meetings among the various defendants. On May 7 Burtman and Himmel met at their midtown office, in the company of Alan Murray, an undercover agent for the Government, to discuss potential repercussions of the discovery by the customs authorities of the contents of the crates. From Burtman's and Himmel's own statements, made to each other in the presence and hearing of agent Murray and testified to by him at the trial, it appeared that the appellants believed that the only person whose participation in the scheme would be discovered was one Grasberg, an employee and agent of Pacific Coast Distributors, who had made the arrangements for the actual importation of the two shipments. Burtman assured Himmel that Grasberg could be trusted, and the two agreed that he should be "taken care of" for accepting full responsibility. Burtman

* Of the Southern District of New York, sitting by designation.

and Himmel met again on the following day, once more in Murray's presence and hearing. At this meeting they discussed the extent to which they could trust Michael Cassotta, a customs agent who had been bribed to pass the shipment through customs without questioning its contents and who had already done so with the first shipment. Burtman assured Himmel that Cassotta could be "trusted," and that he would not talk in the face of an investigation. Cassotta's reliability was also considered at yet a third meeting on May 17th, similarly attended by Murray, between Burtman and co-defendants Charles Tourine and Pasquale Giordano at a midtown Manhattan restaurant. Tourine assured Burtman that Cassotta had been given two payments, one of $1,000 and another of $3,000, and that Burtman could rest assured that Cassotta would not talk.

A one-count indictment was subsequently filed in the Southern District of New York against Burtman, Himmel, Tourine and Giordano, charging them under 18 U.S.C. § 371 with conspiracy to defraud the United States and the Bureau of Customs by bribing customs agents and employees and otherwise avoiding customs inspections of items imported into the United States. The jury found Burtman and Himmel guilty as charged, but it was unable to reach a verdict as to Tourine and Giordano. A subsequent motion by appellants' counsel for a new trial on the ground of newly discovered evidence was denied, and each of the convicted defendants was sentenced to one year imprisonment and a $5,000 fine.

■ The appellants' principal claim on appeal is that the court committed reversible error when it allowed undercover agent Murray to testify at the trial concerning the admissions made by them which he had heard. They cite as authority for their position Krulewitch v. United States, 336 U.S. 440, 442–443, 69 S.Ct. 716, 717, 93 L.Ed. 790 (1949), and Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). Both of these cases concerned claims by

the prosecution that the conspiracy had continued beyond the commission of the substantive offenses involved through a period during which the accused were trying to conceal the offenses and their participation in them. In the first of the two cases the purpose of the Government in trying to extend the period of the conspiracy was to get into evidence the complaining witness' hearsay testimony of what a claimed co-conspirator said the defendant said. In the second of the two cases, the Government sought to get by a three-year statute of limitations by showing that the original conspiracy included, beside the arrangement for the substantive offense, an agreement and plan among the accused for concealment of the offense and their participation in it, and that the conspiracy continued through the carrying out of this plan of concealment. The Supreme Court held that there was no direct evidence of such an "express original agreement among the conspirators * * *"

The Government asserts there was such an agreement in the present case and points to some evidence in support of it. Whether there was sufficient to warrant a finding that the alleged conspiracy continued into the concealment and avoidance period need not be passed upon, however, because the inculpatory statements of the defendants, testified to by Murray were not told him by an alleged co-conspirator of the accused but by the defendants themselves. There was no need to show that the conspiracy extended beyond the point where the crate broke open and the true contents were disclosed and seized. The defendants' statements qualified as admissions and were admissible as such as an exception to the hearsay rule. McCormick, Evidence ¶239, pp. 502–5 (1954).

■ The appellants object that even if this is so, the admissions were not sufficient, absent corroboration, to sustain a conviction under the holdings of Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and Smith v. United States, 348 U.S. 147, 75

S.Ct. 194, 99 L.Ed. 192 (1954). They further assert that there was no such corroboration. The Government, however, points to the independent evidence of the invoices showing the goods shipped as "cups and saucers"; the actual arrival of the shipments of pornographic booklets instead of cups and saucers; the evidence that Burtman was in the magazine business; his arrangements with Drucker for storage of the materials; Himmel's presence at Drucker's printing establishment when the cartons of booklets were uncrated; and Himmel's removal of the merchandise. There was evidence connecting the appellants with Pacific Coast Distributors, consignee of one of the shipments, and with Mr. Grasberg, the employee of Pacific Coast Distributors. There was also the independent evidence that the customs agent Cassotta checked through the first shipment and, barring the accident of the broken crate, would in the ordinary course have passed upon the second shipment.

It is our opinion that there was ample substantial independent evidence to establish the trustworthiness of the admissions. The *Opper* and *Smith* decisions do not require more. *Opper* expressly stated that the corroborative evidence "need not be sufficient, independent of the statements, to establish the corpus delicti." It was, however, sufficient in this case to fortify the truth of the admissions and warranted the jury's drawing the inference that they were true. Moreover, the corroborative evidence together with the admissions were sufficient for the jury to find guilt beyond a reasonable doubt.

◼ Appellants also complain that the court refused to consider their requests to charge. These were not submitted until after the arguments had been completed and the court was just about to deliver its instructions to the jury. Counsels' delay was plainly in violation of Rule 30 F.R.Crim.P. The court on the Friday on which the trial commenced had particularly requested counsel to submit any requests before adjournment on the following Monday afternoon. Counsel for Tourine said he would be unable to submit the requests until sometime later. Apparently the trial court treated Tourine's counsel's representations as made on behalf of all defendants. On Tuesday morning the court said it would receive the requests, and again Tourine's counsel said they had not been prepared but he would have them ready by Wednesday morning. The court said it would "look at them even though they are late." Although it is clear that the trial judge was desirous of having the requests to charge in hand much earlier than at the close of the evidence, the time specified in Rule 30, he acceded to counsels' several requests to lengthen the earlier time. But the court constantly reminded counsel of the time requirements of the Rule, and never stated that the requests could be filed and ruled upon after the time fixed by the Rule.

◼ Although the attorney for Tourine on Tuesday morning indicated that the case was progressing faster than he had anticipated, neither he nor anyone else suggested that the presentation of the defense evidence and the arguments of counsel were likely to be completed that afternoon. Yet they were, and at that point no further references to requests were made by any counsel. And then, when the trial court had not received the requests before the opening of court Wednesday morning and learned that the defense counsel had not even at that time agreed on what requests to submit, he quite properly went forward with his charge and told counsel, in effect, that any question they might have raised in their requests could be raised through the taking of exceptions. Under the circumstances it became impossible for the court to "inform counsel of its proposed action upon the requests prior to their arguments to the jury * * *" as the Rule directs. If counsel want to invoke this portion of the Rule and insist upon rulings on their requests, they must file them at the close of the evidence. If they have let

the time allowed them by the rules go by, they will have to make the best of what the court permits them to do. Of course, a judge should not agree to a particular procedure and then suddenly revoke it to the prejudice of parties relying on it. But whatever construction may be put on the Tuesday morning discussion about filing requests, the judge was entitled to rely on their being filed a reasonable time before the opening of court on Wednesday morning, particularly in view of the posture of the trial. Instead, at the opening of court, when he was about to deliver his charge, he was faced with the proposal of a further delay to afford counsel an opportunity to examine and discuss the individual requests of each of them.

It is the duty of counsel to comply with the rules, and it does not lie well in their mouths to complain of the court's refusal to accept their requests to charge when they themselves had completely disregarded the precepts of Rule 30.

■ If requests to charge are to be of any value at all to the trial judge, they must be filed sufficiently in advance of the giving of the charge so that they may be considered by the judge when he prepares the charge. See 8 J. Moore, Federal Practice ¶30.03[1] (2d ed. 1969). The requirement that the requests be filed prior to the close of the evidence is also desirable for the purpose of enabling opposing counsel to frame his summation as well as make objections to the proposals. See *id.* at ¶30.03[2]. In the present case both of these objectives were frustrated by appellants' delay. We find it difficult to understand, how trial lawyers, as experienced as those in this case, can seriously contend that they expected the trial judge to give rulings on detailed requests to charge which were submitted to him only minutes before he was required to charge the jury.

The appellants claim they were not only prejudiced by the refusal of the trial court to accept and rule on the requests, but also allege errors in the charge as given, which they assert are set forth in the plethora of exceptions which consumed twenty-one pages of the trial transcript. We hold that the appellants suffered no such prejudice; and, after an examination of each of the many exceptions, conclude that none points to reversible error.

Another point raised by the appellants is that the over-all effect of the manner in which the trial judge summed-up the evidence was so favorable to the Government that the defendants were, in effect, denied a jury trial.

■ The trial judge in a federal court may summarize and comment upon the evidence and inferences to be drawn therefrom, in his discretion. This does not mean that he must include every scrap of evidence as if the jury were dependent upon the court's summation alone as the basis for its deliberations. United States v. Kahaner, 317 F.2d 459, 479 (2 Cir.), cert. denied Keogh v. United States, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963). The purpose of such summation and comment is to assist the jury in winnowing out the truth from the mass of evidence, much of it conflicting, and perhaps placed out of focus by different claims concerning its meaning and interpretation by the arguments of the parties. So long as the trial judge does not by one means or another try to impose his own opinions and conclusions as to the facts on the jury and does not act as an advocate in advancing factual findings of his own, he may in his discretion decide what evidence he will comment upon. His fairness in doing so must be judged in the context of the whole trial record, particularly the evidence and the arguments of the parties. So examined and considered in the present case, we are satisfied that the court did not step outside of its legitimate province in commenting on the evidence. Although most of what he had to say concerned the Government's, rather than the defendants' evidence, there was a great deal more of the form-

er, which ran over three hundred pages, than the latter, which covered less than one hundred pages of the trial transcript. See United States v. Light, 394 F.2d 908, 910–911 (2 Cir. 1968).

 Although a charge which usurps the function of the jury will not be saved from error by simply repeating in it from time to time that the jury and not the court is the finder of the facts, such a statement does serve to remind the jury, in the usual case where the court makes no more than fair comment for clarification and to aid the jury in its deliberations, that it must exercise its own judgment and not take what the court has said without further deliberation of its own. In the present case the trial judge, in the course of his comments, amply fulfilled his duty in this regard. 8 J. Moore, Federal Practice, *supra*, ¶30.09.

Appellants have also appealed from the denial by the district court of their motions for a new trial, based on newly discovered evidence. The "new evidence" offered by appellants consisted of a tape recording of a conversation taken by the defendant Burtman who, some two and one-half months after the trial, questioned Drucker at his place of business about his trial testimony. At the time and unknown to Drucker, Burtman had the recorder secreted on his person. Appellants then claimed that the recorded conversation indicated that Drucker had lied on the witness stand and that a new trial was therefore necessary. Following a hearing, at which Drucker testified, the trial judge found in an unreported opinion that there was no indication whatsoever "that [Drucker] lied at trial or that he did not answer the questions asked him at that time to the best of his ability." We have carefully examined Drucker's testimony, the recorded statements, and the testimony from the subsequent hearing, and we find no error in the findings and conclusions of the district judge in this regard.

The remaining points raised by appellants are devoid of merit and call for no discussion.

The judgments of conviction are affirmed.