**UNITED STATES of America**

v.

**Paul P. SMYTH, John E. Adamson, Gregory L. deMesones, Marion R. Ennis, Jr., Shah J. Karim, Thomas A. McGeady, Joseph Spriggs, III, James R. Burns, Luis A. Castillo, Ronald Lovelace, and Albert G. Reese, Jr.**

**Crim. No. 93–12 SSH.**

United States District Court, District of Columbia.

Jan. 31, 1994.

Katherin Winfree, Virginia Cheatham, Christine E. Sykes, Asst. U.S. Attys., Washington, DC, for U.S.

Jonathan Shapiro, Shapiro & Associates, Alexandria, VA, Stephen G. Cochran, Cochran & Rathbun, McLean, VA, for Smyth.

Plato Cacheris, Philip T. Inglima, Cacheris & Treanor, Washington, DC, for Adamson.

Bernard Grimm, Washington, DC, for deMesones.

Eugene M. Propper, T. Scott Wilkinson, Washington, DC, for Ennis.

Hamilton P. Fox, III, Lovida H. Coleman, Jr., Erin K. Monoghan, Washington, DC, for Karim.

Joseph R. Caldwell, Jr., Lisa D. Burget, Miller, Cassidy, Larroca & Lewin, Washington, DC, for McGeady.

Michael Rosier, Patricia A. Moore (pro hac vice) Ronald Wright, Washington, DC, for Spriggs.

Henry W. Asbill, Timothy D. Junkin, L. Barrett Boss, Washington, DC, for Burns.

Francis D. Carter, Washington, DC, for Castillo.

Earl J. Silbert, Adam S. Hoffinger, Schwalf, Donnenfeld, Bray & Silbert, Washington, DC, for Lovelace.

Jonathan D. Schiller, Donovan, Leisure, Rogovin & Schiller, Margaret Miller, Washington, DC, for Reese.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are the proposed individual theory of defense instructions of defendants Smyth, Adamson, deMesones, Karim, Castillo, Lovelace, and Reese. These instructions were submitted on Friday, January 14, 1994, during and after the formal statement of objections to the Court's formulation of the jury instructions. On January 21, the Court denied defendants' requests to include those instructions in the final jury instructions. This Memorandum Order, issued on the 62nd day of trial as closing arguments continue, more fully sets forth the Court's reasoning and describes the unusual course of events leading up to the final jury instructions.[1]

*Background*

The progress of this eleven-defendant trial has not been smooth. It has been, unfortunately, reflective of the general decline in civility exercised by attorneys that has become such a source of concern to observers of, and participants in, the judicial process.

All of the approximately 23 attorneys who have entered appearances on behalf of the defendants are able and most are quite experienced. The Court approached the trial with optimism that, although vigorous representation of all parties would be expected, there would be a high degree of professionalism. Prior to opening statements, the Court reminded defense counsel to talk only about what the evidence would show.[2] That direction was honored mainly in the breach; basically there were eleven opening arguments rather than opening statements. (The record will reflect what was said, but one simple illustration was the statement by one defense counsel that she and her co-counsel were married and had three children.) There is no question but that the purpose of an opening statement is narrow: "It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976) (Burger, C.J., concurring).[3]

---

1. The Court concludes, once again, that certain positions should be expressed in writing. This practice has been followed previously in this case, in part because of the seemingly unending series of defense motions and in part because so many of the hundreds of discretionary rulings that the Court has been obliged to make in the case have been distorted when they later have been characterized on the record by defense counsel (whether by inadvertence or by design is known only to defense counsel).

2. In this Memorandum Order, the Court uses the term "defense counsel" generally and elects to single out none, and assuredly they are not fungible. Some have been quite helpful to the Court in assisting the progress of the case, as the Court has recognized on the record.

3. The practice of turning opening statements into opening arguments unfortunately has become quite common. Other judges of this court simply interrupt when defense counsel begin to argue in their "opening statements." Because this presents other problems, the undersigned is reluctant to follow that approach. Rather, the undersigned has been virtually persuaded by this case henceforth to deny oral opening statements to both sides in most cases, receiving instead written statements from counsel to be edited and then read by the Court to the jury along with preliminary instructions at the start of the trial.

The Court also has been genuinely disappointed by defense counsel's pattern of contentious conduct and dilatory tactics, as evidenced in part by the continual filing of last-minute motions.[4] The late-filed theory of defense instructions dealt with herein are further evidence of this pattern.

*The Practice Governing the Submission of Proposed Jury Instructions*

Rule 30 of the Federal Rules of Criminal Procedure, in relevant part, states:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time, copies of such requests shall be furnished to all parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.

Fed.R.Crim.P. 30. The Court briefly explains—as it is confident it previously did orally on the record—its unvarying practice as to instructions in accordance with Rule 30.

Instructions cannot feasibly be drafted "by committee" with the Court and all counsel. Rather, the Court directs the filing of proposed instructions by both sides, following which the Court prepares a composite set of instructions that it deems appropriate. Thereafter, the Court meets informally with counsel to give them an opportunity to change the Court's mind on any instruction. After counsel's positions have been analyzed, the Court finalizes its instructions, and asks the parties to state their objections on the record prior to closing arguments, so that compliance with Rule 30 may be accomplished without later stranding the jury for an undue amount of time.

*The Late–Filed Theory of Defense Instructions*

■ Defendants' individual proposed theory of defense instructions, submitted on Friday, January 14, 1994, during and after the formal statement of objections to the Court's formulation of the jury instructions, and four days after the close of the evidence, are clearly untimely under Rule 30.

Although it is the normal practice of this Court to require parties to submit proposed jury instructions on the day before trial, the Court here departed from this practice, due to the anticipated four-month duration of this trial, as an accommodation to the parties.[5] Proposed jury instructions were due on December 17, 1993.[6] Defense counsel worked

---

*See United States v. Young & Rubicam,* 741 F.Supp. 334, 352–53 (D.Conn.1990); *see also United States v. Salovitz,* 701 F.2d 17 (2d Cir. 1983).

**4.** The Court has addressed previously its displeasure with the late submission of the prospective jury panel questionnaire. It also has addressed defense counsel's failure to provide the names of potential witnesses prior to voir dire until directed to do so by the Court. (Indeed, after many weeks of trial, it became necessary for the Court to order defense counsel to provide the identity of their anticipated witnesses to the government as the government neared the conclusion of its case-in-chief.) Other tactics include a motion to stay the trial, filed at 10:47 p.m. the night before jury selection was to begin, and motions *in limine* filed only the day before certain evidence was to be introduced. Defendants' submission of additional proposed jury instructions four days after the evidence had closed reflects the same pattern. The undersigned has been a judge on this Court for ten years and has presided over many lengthy, multi-defendant trials. Thus the Court is aware that the amount of work necessary for the effective preparation for and participation in a trial of this magnitude puts time-pressure on all participants; last-minute filings are to a certain extent inevitable. Based on its previous experience and the overall pattern in this case, however, the Court believes that much of defense counsel's conduct arose not out of necessity, but out of a deliberate strategy designed to disadvantage not only the government, but also the Court.

**5.** At the September 29, 1993, informal pretrial conference, the government estimated that the presentation of its case-in-chief would take approximately six weeks. Counsel for each of the eleven defendants estimated that he or she expected the presentation of his or her case to take three to five days. In fact, the government's case-in-chief lasted three months, and all defendants then rested without presenting any direct evidence.

**6.** Proposed jury instructions were originally due no later than December 10, 1993. Order of October 26, 1993. The Court then changed this date to November 19, 1993, on the erroneous belief that the undersigned had been scheduled as the overall court's motions judge for the month of January, which would have diverted a significant amount of time from the task of pre-

together and submitted jointly proposed jury instructions in a timely manner, as did the government.

On January 6, the government rested its case-in-chief. The Court heard defendants' motions for judgment of acquittal on Friday, January 7, and Monday, January 10, and denied those motions on January 10. That same day, each defendant rested. Accordingly, the evidence closed on January 10. It was agreed by all parties that closing arguments would begin on Tuesday, January 18.[7] The Court needed the interim period to finalize jury instructions, to hold its customary informal instruction conference with all counsel, and to permit counsel to state their objections on the record pursuant to Rule 30. Additionally, most of the defense counsel expressed a desire to avoid splitting up closing arguments over a long weekend (which included the Martin Luther King, Jr., holiday).

On January 12, the Court informed all counsel that the jury instructions would be available January 13, at 5:30 p.m., and that the instruction conference would take place the following day, January 14, at 2:00 p.m., after which they could formally state their objections for the record. When the infor-

mal conference on instructions began as scheduled, present were approximately 20 defense counsel, three prosecutors, the undersigned, and one of the undersigned's law clerks. The Court first raised seven questions regarding the instructions, seeking counsel's views prior to finalizing the instructions.[8] The Court accepted some of the proposed revisions; for instance, language from the defendants' jointly proposed theory of the defense instruction was incorporated into another instruction.[9] After the Court raised all of its own questions, it repeatedly invited defense counsel to raise their questions as to the Court's proposed instructions.

At the conference, to the Court's considerable surprise, several defense counsel stated that they would be submitting additional proposed instructions on the theory of defense that evening. The Court responded that it could not preclude counsel from filing anything they chose, but assuredly did not state that it would accept new instructions as timely, in light of the fact that closing arguments were scheduled to begin the next business day, Tuesday, January 18.[10]

The supposed justification for the late filings appears to arise from defense counsel's

paring jury instructions. Amended Order of November 1, 1993. After the undersigned was informed that he was scheduled as motions judge for February, and upon request of defense counsel, the Court extended the due date to December 17, 1993.

7. Due to the unforeseen severe winter weather and the closing of the courthouse that week, closing arguments did not begin until January 21.

8. One such question, based upon *United States v. Taylor*, 997 F.2d 1551, 1558 (D.C.Cir.1993), asked whether counsel wanted a reasonable doubt instruction. All defense counsel requested it, so one was included.

9. *See* Defendants' Instruction No. 33: Joint Theory of the Defense, filed January 10, 1994. The Court incorporated the last sentence of paragraph 1, which stated: "The defendants contend that the evidence in this case shows a series of *separate transactions over a period of twenty-one months* and not a single agreement by all of them to violate the law as charged." The rest of the proposed instruction consisted of a good faith defense instruction (which the Court found to be inconsistent with the law), a general denial of guilt, and statements of what the defendants sup-

posedly believed or understood, with respect to which there was no evidentiary basis.

10. One final matter with regard to the informal instruction conference compels comment. After the Court spent nearly three hours in the informal conference with counsel, seeking to raise and resolve all instructional questions, the Court expected all parties to proceed to the courtroom to go on the record and note briefly their objections in advance of the closing arguments. What actually occurred was extraordinary. As soon as the parties went on the record, defense counsel mounted challenges to virtually every instruction, many of which had not been raised in the three-hour informal conference which was held precisely for that purpose. (For example, counsel for defendant Burns objected to virtually all of the standard reasonable doubt instruction taken from the Federal Judicial Center Pattern Jury Instructions, at 28 (1987).) Defense counsel spent nearly three hours in court making what clearly were intended to be rather simple Rule 30 objections for the record. It was about 7:45 p.m. on Friday evening when the proceeding finally was concluded. In retrospect, the Court feels that it was too courteous in accepting defense counsel's excuses for making objections on the record that they deliberately refrained from raising at the informal conference.

"reservation of rights" letter.[11] On the morning of January 10, shortly before each defendant in turn rested his case, defense counsel had filed, *inter alia*, additional proposed jury instructions, which, as noted, included a jointly proposed theory of the defense. Attached was a letter stating that "defendants' counsel respectfully reserve the right to propose instructions specific to each defendant's theory of the case or other matters that may arise. . . ." Letter from Lovida H. Coleman, Jr., to Judge Stanley S. Harris, January 10, 1994.[12] Although the January 10 submission was timely, as it was submitted before the close of the evidence, to the extent that counsel "reserved the right" to submit additional proposed instructions (which the Court never expressly addressed), all counsel were clearly on notice that the deadline for additional proposed instructions was "at the close of the evidence," pursuant to the express terms of Rule 30.[13]

■ The reason for the requirement of Rule 30 that counsel file requests for jury instructions no later than "at the close of the evidence" is that the timely submission of jury instructions is necessary "for the court to 'inform counsel of its proposed action upon the requests prior to their arguments to the jury * * *' as the Rule directs." *United States v. Tourine*, 428 F.2d 865, 868 (2d Cir.1970) (holding that the trial court properly went forward with charging the jury the day after the close of evidence and closing

arguments, despite defendants' request for delay to submit additional proposed instruction) (alterations in original), *cert. denied sub nom., Burtman v. United States*, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971). As the Second Circuit further explained:

> [i]f requests to charge are to be of any value at all to the trial judge, they must be filed sufficiently in advance of the giving of the charge so that they may be considered by the judge when he prepares the charge. The requirement that the requests be filed prior to the close of the evidence is also desirable for the purpose of enabling opposing counsel to frame his summation as well as make objections to the proposals. [Otherwise], both of these objectives are frustrated by [a defendant's] delay.

*Id.* at 869. Thus it is within the trial court's discretion to consider requests that are not submitted in compliance with the timeliness requirement of Rule 30. *See United States v. Watson*, 894 F.2d 1345, 1350 (D.C.Cir. 1990) (holding that, in the context of proposed jury instruction submitted after closing argument, the trial court's decision not to honor the request would not be overturned "absent abuse of [ ] discretion so as to amount to 'plain error' "). Under the express terms of Rule 30, defendants' proposed individual theory of defense instructions, submitted four days after the close of the evi-

11. The Court, in its intensive work on the instructions, concentrated on the content of its instructions themselves, and frankly paid little attention to Ms. Coleman's transmittal letter. *See* Local Rule 106(b) ("Except when requested by a judge, correspondence shall not be directed by the parties or their attorneys to a judge. . . ."). No request for correspondence was made.

12. Defense counsel's December 17, 1993, submission also included a transmittal letter stating that:

> [T]his filing contains all of the defendants' proposed instructions, with the exception of instructions regarding theories of the defense and 404(b) evidence. As before, defendants' counsel respectfully reserves the right to propose additional instructions based on developments during the course of the trial.

Letter from Lovida H. Coleman, Jr., to Judge Stanley S. Harris, December 17, 1993.

13. Defense counsel attempt to excuse the lateness of the submission of the individual theory of defense instructions on the grounds that they could not put together a theory of defense instruction until they knew whether the Court would accept their jointly proposed theory of defense on good faith (which the Court rejected as inconsistent with the law) and until they knew precisely what the Court's final instructions would be. These arguments are meritless. First, defense counsel should have been on notice that it was likely that the good faith instruction would be rejected, as it was based in large part on an ignorance-of-the-law defense, which is inconsistent with the law on money laundering and had no evidentiary basis. Second, the Court presumes that all counsel are familiar with the Federal Rules of Criminal Procedure, including Rule 30, which clearly does not contemplate that counsel may file additional proposed jury instructions after the close of the evidence.

dence and the business day before closing arguments, were untimely.[14]

Nevertheless, the Court did review all of the proposed theory of defense instructions and determined that it would not include them in the final jury instructions, in part because the substance of the proposals is conveyed in the instructions as a whole. *United States v. Dale,* 991 F.2d 819, 852 (D.C.Cir.1993). Specifically, virtually every proposed theory of defense instruction requests the Court to instruct the jury that the defendant's theory is that: (1) it has not been proven that he participated in any conspiracy, and that if there is any evidence of a conspiracy, he denies that there was a single conspiracy as charged in the indictment; (2) he lacked the required specific intent in the money laundering or attempted money laundering counts; (3) with respect to those charged with attempted money laundering, he did not perform an act that constituted a "substantial step"; (4) he was entrapped; and (5) venue does not lie in the District of Columbia. Each of these is covered in the actual jury instructions. *See* Jury Instructions: Single or Multiple Conspiracies, Money Laundering, Attempt, Entrapment, and Venue. Other than the above, the various defendants' proposed theories of defense would have the Court either give its imprimatur to contentions that have no evidentiary support or merely rehearse the evidence, which a trial court is not required to do. *United States v. Mathis,* 535 F.2d 1303, 1305 (D.C.Cir.1976) (noting that, with respect to a defendant's theory of defense, "a trial court need not 'rehearse the evidence' ").

Accordingly, it hereby is

ORDERED, that the requests of defendants Smyth, Adamson, deMesones, Karim, Castillo, Lovelace, and Reese to have the jury instructed on their individual theories of defense in the manner requested are denied.

SO ORDERED.

---

14. The Court provided all counsel with 61 pages of proposed instructions. In effect, defense counsel seek to have the Court conclude with an additional 30 or so pages that would merely summarize their arguments, much of which would be without any evidentiary support.