16-3104-pr
*Molina v. City of Elmira*

UNITED STATES COURT OF APPEALS<br>FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand nineteen.

PRESENT:  DENNIS JACOBS,
          SUSAN L. CARNEY,
          JOSEPH F. BIANCO,
                    *Circuit Judges.*

---

JOSE MOLINA,

                    *Plaintiff-Appellant*,                    16-3104-pr

          v.

THE CITY OF ELMIRA, NEW YORK, MATTHEW D. SAUNDERS, JAMES E. WANDELL, JOSHUA D. VANSKIVER, STEPHEN M. LINCOLN, JOHN PERRIGO,

                    *Defendants-Appellees*.

---

FOR APPELLANT:                    A.J. BOSMAN, Bosman Law Firm L.L.C., Rome, NY.

FOR APPELLEES:                    JEREMY J. HOURIHAN, Barclay Damon, LLP, Elmira, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 15, 2016, is **AFFIRMED**.

Plaintiff Jose Molina appeals from the denial of his motion for judgment as a matter of law or for a new trial following a verdict in favor of defendants Matthew Saunders, James Wandell, Joshua Vanskiver, Stephen Lincoln, and John Perrigo under 42 U.S.C § 1983 in his lawsuit arising from the circumstances surrounding the arrests of Molina and his son on Molina's property. Molina argues that (1) defendant-officers' warrantless entry onto Molina's property was unlawful because no exigent circumstances existed to justify it; (2) defendants committed a *Batson* violation by exercising a peremptory strike on the only minority panelist; and (3) the District Court (Larimer, *J.*) impermissibly commented on the evidence and failed to adequately instruct the jury regarding exigent circumstances. We review the denial of a motion for judgment as a matter of law *de novo,* "apply[ing] the same standard[s] that [are] required of the district court," *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (second and third alterations in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)), and the denial of a motion for a new trial for abuse of discretion, *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013). In the context of a motion for a new trial, we review the substance of jury instructions *de novo*. *Rasanen v. Doe*, 723 F.3d 325, 331-32 (2d Cir. 2013). In so doing, we assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

## I. Exigent Circumstances

Molina argues that defendants' warrantless entry onto his property to effect the arrest of his son, and which led to his own arrest, was unlawful because the circumstances surrounding the disorderly conduct for which his son was arrested did not amount to an exigency. Molina further asserts that, even if exigent circumstances existed for defendants to enter the property and arrest his son, there was no continuing exigency to justify their remaining on the property or re-entering the property to arrest Molina.

A post-verdict motion for judgment as a matter of law may be granted only where "(1) [t]here is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) [t]here is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Hernandez v. Keane*, 341 F.3d 137, 143-44 (2d Cir. 2003) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 132 (2d Cir. 1986)). "A court 'must give deference to all credibility determinations and reasonable inferences of the jury,' and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000) (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)).

A warrantless entry is justified only where officers have both probable cause *and* exigent circumstances. *See Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014), as amended (Nov. 24, 2014) (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)). To determine whether a warrantless entry is justified by exigent circumstances, courts apply an "objective test" that "turns on . . . the totality of the circumstances confronting law enforcement agents in the particular case." *Id.* at

3

234; *accord United States v. Gordils*, 982 F.2d 64, 69 (2d Cir. 1992). The factors we consider regarding the existence of an exigent circumstance are, *inter alia*:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*United States v. Delva*, 858 F.3d 135, 154 (2d Cir. 2017) (quoting *United States v. MacDonald*, 916 F.2d 766, 769-70 (2d Cir. 1990)), *cert. denied*, 138 S. Ct. 1309 (2018).

At trial, the jury concluded that probable cause existed for the arrests of both Molina and his son, Jose Molina Jr. ("Junior"), and that exigent circumstances existed to justify entry onto Molina's property to effectuate the arrests. Testimony at trial described the circumstances at Molina's home on the night in question as a single, hectic incident involving a loud, late-night domestic dispute between Molina's inebriated son, Junior, and his ex-girlfriend, who lived in the adjoining home, and Junior's escalating threats against her; attempts by Junior to flee and physically resist arrest; Molina's intervention in the attempted arrest, in which he shouted at, punched, and shoved the arresting officer; a dog attack on one officer and tasering of the dog by another; and the eventual arrests of Junior, Molina, and another relative who lived next door—all in a short period of time. The District Court found that the jury's conclusion was supported by the testimony regarding the circumstances surrounding the entry and arrests including, *inter alia*, Junior's level of intoxication, his escalating threats towards his ex-girlfriend including threats to harm or kill her, defendants' lack of success in defusing the situation through verbal requests, and the concern for the ex-girlfriend's safety thereby created. *Molina v. Saunders*, 12-CV-6310, 2016 WL 4184453, at \*2 (W.D.N.Y. Aug. 4, 2016). Applying the standards above, we agree and conclude that the trial record contains sufficient evidence for the jury to have rationally

4

concluded that exigent circumstances existed to justify defendants' entry on to Molina's property for the purpose of arresting Molina and his son.

To the extent that Molina argues that any exigent circumstances dissipated once Junior was arrested and was led away from Molina's property, and that there was no continuing exigency to justify his subsequent arrest on the property, we find that argument unpersuasive. As a threshold matter, it is unclear from the record whether all of the police officers left the property while Junior was brought to the patrol car following his arrest. In any event, even assuming *arguendo* that the police officers briefly re-entered the property to arrest Molina, there was evidence in the record that established the following: (1) while they were attempting to take Junior into custody, Molina repeatedly struck one of the officers to prevent the arrest; (2) after shoving and punching the officer, Molina would retreat to different areas of the house from which the officer was concerned Molina might retrieve a weapon; and (3) within moments after Junior was arrested and brought to the patrol car, Molina was arrested on the porch as he continued screaming and yelling at the police. Under such circumstances, a jury could rationally conclude that a continuing exigency allowed defendants to briefly remain on, or re-enter, the property to arrest Molina on his porch, rather than to allow him potentially to retreat into his house again and arm himself in an agitated state, after having already assaulted a police officer during the arrest of his son. Accordingly, because there is evidence supporting exigent circumstances for the arrest of Molina and his son on Molina's property, Molina was not entitled to judgment as a matter of law on this ground.

## II. *Batson* Challenge

Molina argues that a new trial is warranted because defendants committed a *Batson* violation when they used a peremptory strike to exclude a minority individual from the jury

5

panel.  *See Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986); *Edmonson v. Leesville Concrete Co.*,

500 U.S. 614, 630-32 (1991) (applying *Batson* to civil cases).  In particular, he argues that the

panelist struck was the only minority on the entire panel in this case, that Molina is a Hispanic

man, and that the proffered reason provided for the strike—namely, an arrest involving the

panelist's son—was pretextual because defendants' counsel did not use a peremptory strike on a

Caucasian panelist who had a similar life experience that may have created bias against police.

The District Court found that Molina failed to make a prima facie showing of discrimination, but

that even if he had, defendants' reason for the strike was not pretextual because the panelists'

different experiences and resultant feelings about law enforcement meant that they were *not*

similarly situated.  *Molina*, 2016 WL 4184453, at *2.

   *Batson* instituted a three-part burden-shifting framework for determining whether a

peremptory challenge is based on a discriminatory motive in violation of the Equal Protection

Clause:  "First, a [movant] must make a prima facie showing that a peremptory challenge has

been exercised on the basis of race; second, if that showing has been made, the [proponent] must

offer a race-neutral basis for striking the juror in question; and third, in light of the parties'

submissions, the trial court must determine whether the [movant] has shown purposeful

discrimination."  *Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quoting *Snyder v.

Louisiana,* 552 U.S. 472, 477 (2008)).  The final step requires that the judge "make 'an ultimate

determination on the issue of discriminatory intent based on all the facts and circumstances.'"

*Jordan v. Lefevre*, 206 F.3d 196, 200 (2000) (quoting *United States v. Alvarado*, 923 F.2d 253,

256 (2d Cir. 1991)).  In reviewing a party's exercise of peremptory challenges, "[w]e do not

overturn a trial court's finding on the issue of discriminatory intent unless it is clearly

erroneous."  *United States v. Lee*, 549 F.3d 84, 94 (2d Cir. 2008).

Molina compares two panelists whose sons, at one time or another, had been arrested. Molina argues that *Foster*, which stated that "[i]f a [litigant's] proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination," 136 S. Ct. at 1754 (first alteration in original) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005)), compels the conclusion that defendants' reason for striking the minority panelist was pretextual and discriminatory. Defendants' counsel explained to the District Court that he struck the minority panelist because, unlike the Caucasian panelist, the minority panelist seemed to believe that his son's arrest was not legitimate, and the District Court credited that explanation. More specifically, in reporting that his son was arrested for breaking and entering, the minority panelist made statements suggesting that he doubted the validity of the charge and might have taken the arrest personally, including: "I realized you can't walk through a door even though it was open," "[w]e couldn't prove it or disprove it," "[w]e had to make restitution," and, with regard to that restitution, that "Dad [paid.]" Supp. App'x 47-48. By contrast, the Caucasian panelist stated that his son had been arrested several times because his son had a drug problem that had been going on for years. He noted that, though he was initially upset by a warrantless entry onto his property to speak with his son, he later understood the actions of the officers in the context of his son's drug problems.

The Supreme Court has emphasized that "[a] trial court is best situated to evaluate both the words and the demeanor of jurors who are peremptorily challenged, as well as the credibility of the prosecutor who exercised those strikes." *Davis v. Ayala*, 135 S. Ct. 2187, 2201 (2015). On this record, we find no clear error in the District Court's crediting of defendants' counsel's

7

explanation that he struck the minority panelist because he suggested that his son was wrongfully arrested and therefore might be biased against defendant officers.

### III. Jury Instructions

Molina argues that the District Court improperly injected its perspective on the facts adduced at trial, which allegedly favored defendants, in the jury instructions, and failed to remind the jury of the necessity of finding exigent circumstances, in addition to probable cause, to justify the initial entry on to the property by the police to arrest Molina's son.

A jury verdict will be vacated and a new trial required if "the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law," and the plaintiff was prejudiced by the instructions when considered as a whole. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir. 1998)). The question is whether the judge's behavior was so prejudicial that it denied a party a fair trial. *Shah v. Pan Am. World Servs.*, 148 F.3d 84, 98 (2d Cir. 1998).

Molina argues broadly that the District Court impermissibly characterized or commented on the evidence during its jury instructions in a manner favorable to defendants, through descriptions like: "[t]hey were police officers responding to a 911 call and the emergency or situation that they were presented with," App'x 872; the incident as a "fast-evolving thing," App'x 872; and Captain Wandell being "in some distress and some tug of war with [Junior],"[1] App'x 884. We have explained that a "trial judge in a federal court may summarize and comment upon the evidence . . . to assist the jury in winnowing out the truth from the mass of evidence." *United States v. Tourine*, 428 F.2d 865, 869 (2d Cir. 1970) (internal citation omitted).

---

[1] The context of this statement was, "I believe the testimony from them was they went up to assist Captain Wandell, who was in some distress and some tug of war with [Junior]." App'x 884.

8

Moreover, "[s]o long as the trial judge does not by one means or another try to impose his own opinions and conclusions as to the facts on the jury and does not act as an advocate in advancing factual findings of his own, he may in his discretion decide what evidence he will comment upon." *Id.* In assessing such comments on the evidence, we must consider the comments in the context of the entire instructions and the issues in the case. *See id.*

Upon review of these and other comments raised by Molina in the context of the full jury instructions, we conclude that the District Court's description of the evidence in the jury instructions was not meant to, and did not, convey to the jury that the District Court was attempting to impose factual findings on the jury or to act as an advocate for one side. The comments, while referencing testimony and evidence, did not invade the jury's function on the critical issues in the case, especially in the context of the District Court's repeated instructions about the role of the jury as factfinder, both throughout the jury instructions and following Molina's objection. *See, e.g.*, App'x 868 ("You're the judges of the facts."); App'x 869 ("[Y]ou need to decide . . . [w]hat happened on that day."); App'x 900 ("[Y]our recollection as to the evidence . . . controls."); App'x 901 ("[Y]our joint recollection as to the evidence is what controls here . . . you should not assume I have any opinion on the issues in this case."); App'x 912 ("The Court may have said certain things about the facts and so forth. I think I said a couple times it's your recollection as to what the facts are. That includes I guess comments that come from the lawyers or comments that come from the Court. It's your recollection.").

Molina also argues, more narrowly, that the District Court failed to adequately instruct the jury regarding exigent circumstances. This assertion is not supported by the record. The District Court repeatedly referenced the necessity of a finding of exigent circumstances to justify warrantless entry by officers throughout its instructions, and specifically noted that "[jurors]

9

must determine whether there was probable cause to arrest [Junior] and whether there were exigent circumstances justifying going on the property," App'x 877.

In sum, we cannot conclude that the jury was misled about the correct legal standard or otherwise inadequately informed regarding the controlling law, or that Molina was prejudiced by the jury instructions as a whole, particularly in light of the trial court's repeated instructions regarding the appropriate province of the jury.

* * *

We have considered Molina's remaining arguments and find them to be without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court