U.S.A. v. Lee

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

————————————

August Term, 2007

(Argued: December 6, 2007                                    Decided: December 3, 2008)

Docket Nos. 05-1684-cr (L), 05-6851-cr (Con)

————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

IBN LEE, LARRY WILLIAMS,

*Defendants-Appellants,*

————————————

B e f o r e :

STRAUB, HALL, *Circuit Judges*, HAIGHT,[*] *District Judge*

————————————

On appeal from convictions in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) for murder for hire conspiracy. Defendants-Appellants principally contend that the district court violated their Sixth Amendment rights by admitting hearsay statements from a detective's interview with an alleged participant in the conspiracy. We vacate the judgments of conviction for murder for hire conspiracy, and remand to the district court for further proceedings. Defendant-Appellant Lee's separate conviction on the felon in possession of a firearm count is affirmed.

Judge Straub concurs in part and dissents in part in a separate opinion.

————————————

[*] The Honorable Charles S. Haight, Jr., United States District Court for the Southern District of New York, sitting by designation.

1

JULIAN J. MOORE, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Jonathan S. Kolodner, Assistant United States Attorney, of counsel, *on the brief*), New York, NY, *for Appellee*.

KATHERINE ALFIERI, White Plains, NY, *for Defendant-Appellant Ibn Lee*.

JULIA PAMELA HEIT, New York, NY, *for Defendant-Appellant Larry Williams*.

_____

HAIGHT, *District Judge*:

Defendant Ibn Lee appeals from a judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*). Lee was convicted of murder for hire conspiracy in violation of 18 U.S.C. § 1958 and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and sentenced to a term of 240 months. Defendant Larry Williams appeals from a judgment of conviction in the same court, after having been convicted of murder for hire conspiracy in violation of 18 U.S.C. § 1958 and sentenced to a term of 120 months.

On appeal, Lee and Williams argue that the district court erred in violation of the Sixth Amendment's Confrontation Clause by admitting a detective's recounting of a statement made by Maurice Clarke, an alleged participant in the murder for hire conspiracy who did not himself testify at the trial, and that this error requires the murder for hire conspiracy convictions to be vacated. The Government concedes that the admission of the Clarke statement violated the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004), which was decided subsequent to the trial, but argues that such admission was harmless error in this case. Defendants further contend that the evidence was legally insufficient to support the murder for hire conspiracy convictions. Lee raises additional challenges relating to jury selection, the trial process, and ineffective assistance of counsel.

2

We hold that the district court's erroneous admission of the Clarke statement was not harmless beyond a reasonable doubt, and therefore vacate the defendants' murder for hire conspiracy convictions. However, we do not reverse those convictions because the evidence presented at trial—including the improperly admitted Clarke statement—was legally sufficient. Finally, because we conclude that the district court did not err with respect to the felon in possession of a firearm count against Lee, we affirm the conviction against Lee on that count.

**BACKGROUND**

**I.     Factual Summary**

Williams was a drug dealer who controlled the crack-cocaine trade in certain areas of the Bronx. He supplied various dealers with crack cocaine and paid them to sell it. Lee was a member of Williams's drug crew, and sold crack cocaine in the Bronx.

On June 9, 2001, Lee had a violent altercation with Kawaine Ellis, during which Ellis stabbed Lee in the chest. Ellis was arrested and charged with attempted murder by the Bronx District Attorney's Office.

Around October 2001, Lee was the victim of an unrelated shooting.

On November 7, 2001, Williams rented three cars at the Newark Airport in New Jersey. Later that evening, Lee was driving one of the cars in his neighborhood in the Bronx when he was approached by NYPD officers because he was double parked and blocking traffic. When the police asked for Lee's license and registration, Lee stated that his friend had rented the car at Newark Airport and given it to Lee to drive for the evening. The officers looked in the car's center console to find the registration (at Lee's direction) and discovered a Smith & Wesson handgun. Lee was then arrested. When Lee was handcuffed, he said he had the gun for "protection."

3

Around November 8-10, 2001, Williams called Jason Lawton, a member of Williams's drug crew, and demanded that Lawton return a gun to Williams because Lee had "just got bit," meaning that he had just been stabbed or shot. (Lawton had borrowed the gun some time earlier to shoot and attempt to kill another person who had attacked Lawton.) After the call, Lawton met with Williams and returned the gun.

On January 23, 2002, Maurice Clarke was arrested by the NYPD for possession of a firearm. During an interview after his arrest, Clarke told NYPD Detective Joseph Mazzei that he had been hired to kill Ellis, and that at some point he was given a gun, driven around in a vehicle looking for Ellis (who was not found), and paid for his time.[1] As Clarke later indicated that he would invoke his Fifth Amendment rights if called to testify, this hearsay testimony was presented through Detective Mazzei as a statement against penal interest of an unavailable witness.

In late February 2002, Orlando Gordon, who bought crack from and sold marijuana to Lee, was assaulted by "Mel," a member of Lee's drug crew. Soon thereafter, Gordon spoke with Lee about their respective assailants, Ellis and Mel. Lee proposed to Gordon a "body for body" agreement, meaning an exchange in which Gordon would deliver Ellis to Lee, and Lee would deliver Mel to Gordon.

Gordon reported this conversation to Detective Mazzei, to whom Gordon provided information as a confidential informant. A few days later, on March 8, 2002, Detective Mazzei gave Gordon a recording device and instructed him to speak with Lee to see if Lee would discuss

---

[1] Clarke's original statement, which stated that Lee was the person who hired him to kill Ellis, provided him with a gun, and drove around with him looking for Ellis, was redacted to omit reference to Lee so as to comply with *Bruton v. United States*, 391 U.S. 123 (1968).

4

the murder plot. Later that evening, Gordon met with Lee and recorded their conversation. During the meeting, Lee discussed a plan with Gordon, in which Gordon would lure Ellis to a particular location, where Lee would have someone shoot and attempt to kill Ellis. As he was talking to Gordon, Lee placed a call (apparently to the shooter) and stated:

> Tell him I have some, some, I have a um, a favor um, a favor I need to be taken care of. Alright? Tell him, tell him it's that favor I told him, that favor he said he was gonna do for me, you know? You heard? Tell him it's a favor for a favor. Alright? Tell him, get, get at him right now and tell him to call me back on my cell, alright?

After he left the message, Lee told Gordon that he would call him "as soon as my peoples is ready and then we could execute the problem." Later, Lee warned that "this ain't like no scar shit," meaning that he wanted to shoot Ellis, not cut him. Lee warned Gordon not to be in the car when the shooting started because his shooters—whom Lee called "gorillas"—"ain't got aim" and were "gonna lit the car up," or riddle the car with bullets. In between discussing the plot to kill Ellis and purchasing marijuana from Gordon, Lee told Gordon that Lee was "spending more money." At this point, Gordon left the car, went to his stash of marijuana hidden in a building, retrieved some marijuana, and sold it to Lee. Lee then told Gordon that "[b]etween today and tomorrow, it's gonna happen," and promised to call Gordon. But Lee did not call Gordon, and the plan was never executed. During the following days, Lee twice purchased marijuana from Gordon and the "body for body" scheme was not mentioned.

**II. Procedural History**

After the first phase of the trial, Lee and Williams were convicted of murder for hire conspiracy on December 18, 2002. The second phase of the bifurcated trial (with the same jury) dealt with the felon-in-possession charge against Lee. At the conclusion of this bifurcated phase, the jury found Lee guilty of being a felon-in-possession of a firearm on December 19, 2002.

After his conviction, Williams moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal, or, in the alternative, for a new trial pursuant to Rule 33. Williams argued that the evidence was insufficient to sustain the conviction, and raised various other claims. The District Court denied the motion in a Memorandum and Order dated April 1, 2003. It held that "[t]he evidence clearly supported a finding that Williams knowingly involved himself in Ibn Lee's plan to get back at Ellis by shooting him" and that "[a] jury reasonably could have inferred that Williams [procured a rental car and a gun] with the knowledge that Lee planned to commit a murder-for-hire and sought to assist Lee in fulfilling this objective." *United States v. Lee*, 2003 WL 1746968, at \*2 (S.D.N.Y. Apr. 1, 2003). The District Court rejected Williams's other arguments.

Following the Supreme Court's decision in *Crawford*, which was decided after the jury's verdict, Lee moved to set aside the verdict based on the introduction of Clarke's statement through Detective Mazzei. The Government conceded that the admission of the statement was error under *Crawford*, but argued that the error was harmless beyond a reasonable doubt. The District Court agreed, finding that "[t]he evidence of Lee's guilt was overwhelming," even without reference to the Clarke statement. *United States v. Lee*, 2005 WL 476189, at \*3 (S.D.N.Y. Feb. 25, 2005). The District Court also concluded the Government's references to the Clarke statement in its jury addresses were simply part of a "thorough review of all the evidence." *Id.* The District Court thus held that "the Clarke statement was cumulative of all the evidence" and that any error in its admission was harmless beyond a reasonable doubt. *Id.*

**DISCUSSION**

We first address defendants' claim that the district court's admission of the Clarke statement violated the Sixth Amendment's Confrontation Clause, and that the error was not

6

harmless. Second, we address whether the evidence presented at trial was sufficient to prove that Lee and Williams participated in a murder for hire conspiracy. Finally, we consider various arguments related to Lee's felon in possession of a firearm conviction.

**I.       Confrontation Clause Claim**

**A.       Standard of Review**

If properly preserved for appellate review, Confrontation Clause violations are subject to harmless error review. *See United States v. Lombardozzi*, 491 F.3d 61, 76 (2d Cir. 2007). If the defendant failed to properly preserve an issue for appellate review, the erroneous admission of testimony is generally reviewed under a plain error standard. *See Lombardozzi*, 491 F.3d at 72.[2]

To properly preserve the issue for appeal, defense counsel's objection must "put [the] trial court on notice that Confrontation Clause concerns [are] implicated.'" *United States v. Hardwick*, 523 F.3d 94, 98 (2d Cir. 2008) (quoting *United States v. Dukagjini*, 326 F.3d 45, 60 (2d Cir. 2002)).[3] In this case, although the defendants did not explicitly raise a Confrontation Clause objection to the Clarke statement when it was introduced at trial, defense counsel sufficiently put the trial court on notice that Confrontation Clause concerns were implicated through: (1) Williams's pre-trial motion, which explicitly argued that admission of the Clarke

---

[2] "When the source of plain error is a supervening decision, [the Second Circuit] ha[s] employed a modified plain error standard whereby the government bears the burden of proving that the error did not affect the defendant's substantial rights." *Lombardozzi*, 491 F.3d at 74 n.4. However, whether the Second Circuit's modified plain error standard has been overruled by *Johnson v. United States*, 520 U.S. 461 (1997), remains an open question. *See Hardwick*, 523 F.3d at 98 n.4. We need not decide this question because we conclude that harmless error review applies in this case.

[3] In *Dukagjini*, the court noted: "We adhere to the principal that, as a general matter, a hearsay objection by itself does not automatically preserve a Confrontation Clause claim. To be sure, an objection to hearsay testimony could be stated in such a way as to put a trial court on notice that Confrontation Clause concerns are implicated as well." *Dukagjini*, 326 F.3d at 60.

statement would violate Williams's Sixth Amendment right to confrontation, (2) counsel for Lee's argument during the pre-trial conference relating to the "basic fundamental issue" raised by the defendant's inability to cross-examine Clarke, and (3) the defense objection at trial that defendants "won't have an opportunity to cross-examine Maurice Clarke." Thus, we conclude that the defendants properly preserved their Confrontation Clause objection and apply harmless error review.

As the Government concedes that the admission of the Clarke statement violated the Sixth Amendment's Confrontation Clause under *Crawford*, the issue is whether that error was harmless. We have previously explained:

> [I]n determining whether an error was harmless, we must, upon a review of the entire record, be satisfied "beyond a reasonable doubt that the error complained of . . . did not contribute to the verdict obtained." *McClain*, 377 F.3d at 222 (internal quotation marks omitted). In other words, to find the erroneous admission of [the co-defendant's] plea allocution [in violation of *Crawford*] harmless "we must be able to conclude that the evidence would have been 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *United States v. Quiroz*, 13 F.3d 505, 513 (2d Cir. 1993) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)).

> In assessing an error's likely impact on the jury, "the Supreme Court has found the following factors to be relevant . . . (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *Zappulla v. New York*, 391 F.3d 462, 468 (2d Cir. 2004). The strength of the prosecution's case, however, "is probably the single most critical factor." *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006) (internal quotation marks omitted). In the past, this Court has generally found admissions of evidence in violation of *Crawford* to be harmless only where the remaining admissible evidence was "overwhelming." *See McClain*, 377 F.3d at 222.

*Lombardozzi*, 491 F.3d at 76.

        **B.**      **Whether the Admission of the Clarke Statement Was Harmless Error**

8

Detective Mazzei testified at trial that Clarke told him that "he was hired to kill someone," who Clarke then identified as Kawaine Ellis, known as "Q"; that Clarke "had driven around in an attempt to locate and shoot the intended victim, and that he was also supplied with a firearm while doing [] so"; that Clarke had not driven himself but was "driven around"; and that "he was paid for his time after the fact." *See United States v. Lee*, 2005 WL 476189, at *1 (S.D.N.Y. Feb. 25, 2005). We examine the impact of this statement with respect to Williams and Lee separately.

### 1. Williams

In our view, the Clarke statement almost certainly contributed to the verdict against Williams. The other evidence established that, in November 2001, Williams rented a nondescript car (and provided it to Lee), and retrieved a firearm from a member of his drug crew because Lee had "just been bit." The defense argues that Williams could have rented the nondescript car and provided it to Lee in furtherance of drug trafficking activities and that Williams could have provided the gun to Lee for protection (or could have provided it to Lee in response to the unrelated October 2001 shooting, rather than the June 2001 stabbing). But in light of Clarke's testimony, a reasonable juror could have concluded that Williams rented the car and provided the gun to Lee to help Lee get revenge on Ellis for the June 2001 stabbing. Without the Clarke testimony, there is absolutely no indication that the November 2001 car and gun incidents involved a hired killer.

The Clarke statement itself did not explicitly reference Lee, Williams, or the November 2001 incidents. However, it alone revealed that, sometime before January 23, 2002, Clarke was hired to kill Ellis, given a gun, driven around in a vehicle looking for Ellis (who was not found), and paid for his time. A reasonable juror could have inferred that the Clarke statement was

9

related to the November 2001 car and gun incidents involving Lee and Williams, and in fact the prosecutor's opening statement encouraged the jurors to draw precisely such an inference. The prosecutor stated:

> Now, Ibn Lee was all by himself when the police found him on November 7, 2001, with a gun. But you're going to hear that during the investigation of this case, the police interviewed a hired killer who told the[m] that he was driven around on November 7 or early November 2001, looking for "Q" with a gun.

Tr. 6. Thus, the Clarke statement provided the context within which the jury could have concluded that the November 2001 car and gun incidents involved a hired killer.

This depiction of the November 2001 incidents was critical to Williams's conviction because Williams was not implicated in Lee's conversations with Gordon in February and March 2002 about the plot to have Ellis shot.[4] The November 2001 incidents were the only basis for the jury to conclude that Williams was involved in a murder for hire conspiracy; and the Clarke statement was the only piece of evidence that could have linked those incidents to a hired killer. Thus, we cannot find beyond a reasonable doubt that the Clarke testimony did not contribute to the verdict obtained against Williams.

### 2. Lee

The issue of whether the admission of the Clarke statement against Lee was harmless error is a closer question. The recording of Lee's conversation with Gordon in March 2002 makes clear that Lee was orchestrating a plot to have Ellis shot. However, there is some ambiguity as to whether the shooter in the March 2002 incident was promised something of

---

[4] That Williams and Lee continued to engage in drug trafficking together through March 2002 does not implicate Williams in Lee's scheme (involving Gordon) to have Ellis shot in March 2002. Nor does Williams' involvement in the November 2001 car and gun incidents establish his involvement in the March 2002 scheme.

"pecuniary value." *See* 18 U.S.C. § 1958(a).

When Lee called the shooter during his conversation with Gordon, Lee referred to the shooting of Ellis as "a favor for a favor." Under *United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004), the promise of an unspecified "favor" is not sufficient to meet the pecuniary value element. *See id.* at 219 ("[W]e hold that consideration in the form of a 'favor' is insufficient to support a conviction under § 1958, at least in the absence of evidence suggesting that either party had an understanding as to the form that it would actually take."). In between discussing the plot to kill Ellis and purchasing marijuana from Gordon, however, Lee told Gordon that Lee was "spending more money." The Government argues that this phrase referred to Lee spending money to kill Ellis, and a reasonable juror certainly could have reached this conclusion because the discussion preceding that phrase focused on the arrangements for the killing. Perhaps this is the most likely interpretation. But on the other hand, a reasonable juror also could have found that the phrase "more money" related to Lee's purchase of marijuana from Gordon, which occurred right after the phrase was used. In light of the ambiguity of the "more money" phrase on the March 2002 recording, the jury may have relied to some degree on the Clarke statement to find the pecuniary value element of the crime satisfied. In his closing statement, the prosecutor argued that the "more money" phrase referred to Lee spending money to have Ellis killed. Moreover, the prosecutor's closing statements also made repeated reference to Clarke as a "hired killer" who was "paid" to hunt down and kill Ellis. For example, the prosecutor argued:

> How do we know that Ibn Lee and Larry Williams and their criminal partners plotted, joined together, to have Kawaine Ellis, "Q," murdered? . . . You know it because you heard a hired killer, Maurice Clarke, admit to being hired to kill Kawaine Ellis, and, in fact, was put in a car, given a gun, and driven around to hunt down and kill Kawaine Ellis.
>
> . . .

11

This is Maurice Clarke . . . . Who is he? He is a hired killer. This is an assassin. This is somebody paid to kill someone. Who is he paid to kill? Kawaine Ellis. Remember the testimony of Detective Mazzei.

. . .

What else does he [Clarke] say? He admits that in the past — remember he's arrested in January — that before that, he was hired to kill someone. Whom was he hired to kill? Kawaine Ellis, Q.

What else does he tell us? Not only did someone hire him to kill Kawaine Ellis, but that someone put him in a car, put Maurice Clarke, this hired killer, this assassin, that someone who hired him put Maurice Clarke in a car, gave him a gun and drove him around looking for Q, looking for Kawaine Ellis.

Tr. 1099, 1106-07. Given how clearly the Clarke statement established the pecuniary value element and the contextual ambiguity of the money reference in the March 2002 recording, we find that the Government has not established *beyond a reasonable doubt* that the Clarke statement did not contribute to the jury's verdict against Lee.

For these reasons, the admission of the Clarke statement was not harmless error, and the defendants' judgments of conviction for murder for hire conspiracy must be vacated.

**II.     Sufficiency of the Evidence Claim**

In reviewing a challenge to the sufficiency of the evidence, we view the evidence "in the light most favorable to the government" and draw all reasonable inferences in its favor. *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004). In addition, we "consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). In *United States v. Hardwick*, we recently explained that in circumstances where "some government evidence was erroneously admitted, we must make our determination concerning sufficiency taking into consideration even the improperly admitted evidence." 523 F.3d at 101 (quoting *United States v. Cruz*, 363 F.3d 187,

12

197 (2d Cir. 2004)).  The evidence is sufficient if "*any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Finally, a conviction may be based entirely on circumstantial evidence.  *See United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994).

To convict a defendant under § 1958, the Government must show that one party agreed to commit a murder in exchange for another party's provision or future promise of payment or "anything of pecuniary value" and that the conspiracy utilized a "facility in interstate commerce." *See* 18 U.S.C. § 1958(a); *United States v. Perez*, 414 F.3d 302, 303 n.4 (2d Cir. 2005), *cert. denied*, 547 U.S. 1002 (2006).

With the Clarke statement included in the analysis, there was sufficient evidence for a jury to find that Williams and Lee participated in a murder for hire conspiracy.  The evidence established that, in November 2001, Williams rented a nondescript car, which he provided to Lee, and retrieved a firearm from a member of his drug crew because Lee had "just been bit."  A reasonable trier of fact could have found that Williams rented the car and provided the gun to Lee as part of plan for Lee to get revenge on Ellis for the June 2001 stabbing.  The Clarke statement revealed that, sometime before January 23, 2002, Clarke was hired to kill Ellis, given a gun, driven around in a vehicle looking for Ellis (who was not found), and paid for his time.  A reasonable juror could have found that the Clarke statement was directly related to the November 2001 gun-and-car incidents involving Williams and Lee.  Thus, a reasonable juror could have found that Lee and Williams were involved in a conspiracy to pay Clarke to murder Ellis. Finally, a reasonable juror could have found that the interstate commerce element was satisfied because Lee and Williams drove from the Bronx to New Jersey to obtain rental cars from Newark Airport.

13

In Lee's case, the evidence relating to Lee's conversations with Gordon in February and March 2002 about the plot to have Ellis shot independently provided sufficient evidence to support Lee's murder for hire conspiracy conviction. The March 2002 recording revealed that Lee was orchestrating a plot to have Ellis murdered. A reasonable juror could have found that the "more money" phrase in the recording referred to Lee spending money on hit men to kill Ellis, satisfying the pecuniary value element. And a reasonable juror could have found the interstate commerce element satisfied because Lee used a cell phone to contact the shooter.

Thus, we conclude that the evidence—including the Clarke statement—was sufficient to demonstrate that Lee and Williams participated in a murder for hire conspiracy.[5] Where a *Crawford* error requires a conviction to be vacated but the evidence is "sufficient when the improperly admitted evidence is included in the equation, . . . retrial rather than acquittal is the remedy." *Hardwick*, 523 F.3d at 101 (internal quotations and citations omitted).

### III. Lee's Challenges to His Felon in Possession of a Firearm Conviction

In light of our conclusion that the murder for hire conspiracy convictions must be vacated, we need not address various additional arguments raised by Lee and Williams for vacating those convictions. However, we must address various other arguments raised by Lee which apply to his felon in possession of a firearm conviction.

#### A. Lee's *Batson* Challenge

Lee argues that the District Court erred in concluding that the Government's exercise of

---

[5] There is no inconsistency between this finding—that the evidence even without the Clarke statement was sufficient to convict Lee—and our earlier conclusion that the admission of the Clarke statement was not harmless as to Lee. The harmless error analysis looks to whether the erroneously admitted evidence "contributed" to the verdict, and such errors are generally found harmless only where the remaining admissible evidence is "overwhelming." Here, we conclude that the properly admitted evidence against Lee was sufficient, but not overwhelming.

14

two peremptory challenges against the only African-American men in the jury venire did not violate the Equal Protection Clause of the Fourteenth Amendment, as interpreted in *Batson v. Kentucky*, 476 U.S. 79 (1986). Where a defendant challenges the trial court's *Batson* ruling on the ground that the court erred in concluding that the defendant failed to carry his burden of proving discriminatory intent, we give "great deference" to the trial court's ruling on appeal. *Brown v. Kelly*, 973 F.2d 116, 120 (2d Cir. 1992) (internal quotation marks omitted). *See also Hernandez v. New York*, 500 U.S. 352, 365 (1991) ("[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within the trial judge's province.'"). We do not overturn a trial court's finding on the issue of discriminatory intent unless it is clearly erroneous. *See Hernandez*, 500 U.S. at 369; *Brown*, 973 F.2d at 121-22.

After reviewing the record, we conclude that the District Court's *Batson* ruling was not clearly erroneous. In response to Lee's *Batson* challenge, the Government came forward with legitimate, non-discriminatory reasons for its decision to exclude both venire members at issue in this appeal. Specifically, one member was twice late to jury selection, provided little information in response to questions, and stated that he was familiar with Hillside Homes, the area in which the alleged criminal activity occurred. These race-neutral rationales were sufficient for the District Court to conclude that the Government's challenge was not based on race. As to the other venire member, the Government stated that it was concerned that he had listed *The Amsterdam News* as one of the news publications he reads, which the Government described as, *inter alia*, an "anti[-]government newspaper." The District Court declined to undertake a detailed examination of the editorial policy of *The Amsterdam News*, but noted an unpublished summary order, *United States v. Russell*, 125 F.3d 845 (2d Cir. 1997), in which the Second Circuit stated that "[a] trial court might reasonably infer, in a given case, that a regular reader of

15

[*The Amsterdam News*] could be expected to harbor negative feelings against the government's witnesses." *Id.* at \*2. We hold that the District Court had a sufficient basis to accept the Government's reasons as "plausible" and "credible," and to find that Lee had not carried his burden of proving discriminatory intent under *Batson*.

**B.      Lee's Severance Motion**

Lee also challenges the District Court's denial of his motion to sever the murder for hire conspiracy count from the felon in possession of a firearm count. We review the District Court's order to allow joinder of the two counts *de novo*.[6] *See United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). We conclude that the District Court did not err because the facts supporting the two counts against Lee "constitute[d] parts of a common scheme or plan," Fed. R. Crim. P. 8(a), and occurred "in the same series of acts or transactions," Fed. R. Crim. P. 8(b). The handgun found by police in the rental car Lee was driving on November 7, 2001, was both an instrumentality of the murder for hire conspiracy and the basis for the felon-in-possession charge. Given these overlapping facts and their relevance to both charges against Lee, the District Court properly tried both charges against him in the same trial.

**C.      The Bifurcated Proceedings**

In a similar vein, Lee challenges the District Court's order to bifurcate the two counts charged against him into two trial phases and to allow counsel in the second phase to summarize, rather than only to read verbatim, relevant testimony from the first phase. Specifically, Lee

---

[6] Lee states in his brief that this challenge rests on Federal Rule of Criminal Procedure 8(b), but he also acknowledges that the District Court applied Rule 8(a). In its brief, the Government argues that we have not previously held which Rule applies to a situation where, as here, the appellant was the only defendant charged with the count he sought to be severed. We do not reach the issue of which Rule applies because Lee's challenge fails under either Rule.

16

argues that this order violated his Confrontation Clause and Compulsory Process rights under the Sixth Amendment because his counsel could neither recall nor cross-examine witnesses in the second phase of the trial. Lee offers no authority in support of his argument that the District Court's bifurcation order violated his Sixth Amendment rights.

We find no constitutional violation, and even assuming without deciding that the District Court's order violated Lee's Sixth Amendment rights, such a violation was harmless error. *See Cotto v. Herbert*, 331 F.3d 217, 253 (2d Cir. 2003). Although Lee contends that his counsel was "hamstrung" in the second phase of the trial by his inability to recall and cross-examine witnesses, he had the full opportunity to cross-examine such witnesses during the first phase. Moreover, Lee does not identify any question "germane to the felon in possession count" that he sought to ask—and the District Court prevented him from asking—witnesses during the first phase. Brief of Defendant-Appellant Ibn Lee at 56. The procedure employed by the District Court amounted to nothing more than allowing the Government and Lee's counsel to identify for the jury those portions of properly admitted evidence that counsel considered potentially relevant to the jury's deliberations regarding the felon-in-possession count. At various times, the District Court ordered counsel to read certain portions of testimony verbatim, admonished counsel not to "editorialize," prevented counsel from making "redundant" or irrelevant summaries, and reminded the jury that they could ask to have any testimony read back to them during their deliberations. Furthermore, the District Court asked Lee whether he wanted to introduce any witnesses or additional evidence in the second phase of his trial, and Lee declined. In sum, we conclude that the District Court's bifurcation order and related orders regarding the presentation of evidence did not violate Lee's Sixth Amendment rights. However, to the extent that these orders arguably may have constituted such a violation, any error was harmless and thus is not

17

grounds for a retrial.

### D. Ineffective Assistance of Counsel

Lee claims that he suffered from ineffective assistance of counsel at trial because he rejected a plea offer by the Government based on his counsel's incorrect assessment that Lee faced only a maximum term of 15 years instead of 20 years. "[T]his court has expressed a baseline aversion to resolving ineffectiveness claims on direct review." *United States v. Khedr*, 343 F.3d 96, 99-100 (2d Cir. 2003) (citations and internal quotation marks omitted). The Supreme Court has advised that the district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Nevertheless, we will review claims on direct appeal when the record is fully developed and resolution is beyond doubt. *See United States v. Garcia*, 413 F.3d 201, 219 n.13 (2d Cir. 2005). As these requirements are not met here, we decline to review Lee's ineffectiveness claim at this point.

After argument, the Government submitted a letter pursuant to Fed. R. App. P. 28(j) citing the Court to *United States v. Jones*, 393 F.3d 107, 109 (2d Cir. 2004). Appellant Lee then moved to strike the letter on the grounds that it exceeded the bounds of Rule 28(j) in both length and content. In the interim, this Court has issued its opinion in *United States v. Hardwick*, 523 F.3d 94 (2d Cir. 2008), which became the subject of a second Rule 28(j) letter from the Government. In *Hardwick*, we held that where "some government evidence was erroneously admitted, we must make our determination concerning sufficiency taking into consideration even the improperly admitted evidence." *Id.* at 101 (internal quotation marks omitted). In view of the Court's recent reaffirmation of this principle, and our application of it in this opinion, Lee's motion to strike is denied as moot.

18

**CONCLUSION**

For the reasons discussed above, we vacate the judgments of conviction entered by the District Court against Lee and Williams for murder for hire conspiracy, affirm the conviction against Lee on the felon in possession of a firearm count, and remand to the District Court for further proceedings. Lee's motion to strike the Government's Rule 28(j) letter is denied as moot.

STRAUB, Circuit Judge, concurring in part and dissenting in part:

The majority today has vacated the convictions of Defendants-Appellants Ibn Lee and Larry Williams as a result of the District Court's admission into evidence of the so-called Clarke statement. The government concedes that the admission of this evidence violated the Confrontation Clause because of the intervening decision of *Crawford v. Washington*, 541 U.S. 36 (2005), but it contends that any error in this regard was harmless. The majority concludes otherwise. As I conclude the admission of the Clarke statement was harmless error, I respectfully dissent and would affirm the District Court in all material respects.

Viewing the evidence in its entirety, I am convinced beyond a reasonable doubt that the Clarke statement did not contribute to the verdict obtained. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). At trial, the government presented overwhelming evidence other than the Clarke statement to establish that Lee and Williams conspired to hire another to murder Ellis. Specifically, the evidence demonstrated the following: (1) that Lee had a motive to kill Ellis because Ellis had previously stabbed Lee; (2) that Lee and Williams rented cars from Newark Airport, despite the fact that they both owned fancier vehicles; (3) that the police arrested Lee in one of these cars and discovered a gun inside; (4) that Williams demanded the return of a gun from an individual named Jason Lawton; (5) and that Williams told Lawton that he needed the gun for Lee because Lee had recently been stabbed. In addition, the government had presented evidence that Lee had proposed a "body for body" trade to testifying witness Orlando Gordon. According to Gordon's testimony and recorded conversations involving him and Lee, Lee proposed that he would lure an individual in order to be killed by Gordon in exchange for Gordon luring Ellis to a predetermined location in order to be killed by Lee's

20

associates. In the course of planning this scheme, Lee complained that he was "spending more money." The evidence also shows defendants' involvement in various drug transactions and the close relationship among Lee, Williams and the cooperating witnesses, Lawton and Gordon, and why they would work together in a conspiracy to commit murder-for-hire. Given this body of evidence, a reasonable jury could have easily found that both defendants had conspired over several months to hire another individual to kill Ellis.

Indeed, the admission of the Clarke statement was relatively unimportant to the Government's case. It did not connect either defendant to a murder for hire conspiracy, but rather only established how far such a conspiracy, irrespective of its participants, might have progressed. As conveyed to the jury via the testimony of Detective Mazzei, the Clarke statement provided the jury with only the following facts: an unidentified person hired Clarke at an unspecified time to drive around an unspecified area to look for and kill Ellis, whom Clarke also knew as "Q"; Clarke had been provided with a gun for this purpose; Clarke never found Ellis; and Clarke was paid for his time and efforts. However, the crime with which Lee and Williams had been charged was a murder for hire conspiracy. That crime does not require that such a conspiracy have actually progressed to the point of hiring a killer, only that the defendant has entered into an agreement with another for that purpose. *See* 18 U.S.C. § 1958. At bottom, the Clarke statement does nothing to establish such an agreement involving either Lee or Williams. Indeed, neither defendant is mentioned in that portion of Mazzei's testimony.[1] Instead, the

---

[1] Lee also contends that the Clarke statement was admitted in violation of *Bruton v. United States*, 391 U.S. 123 (1968). "A defendant's *Bruton* rights would be violated, however, only if the statement, standing alone, would clearly inculpate him without introduction of further independent evidence." *U.S. v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir. 1985). However, Lee

21

statement merely establishes that, assuming that either Lee or Williams were involved in such a conspiracy, it had progressed to the point of *actually* hiring Clarke and assisting him in finding and killing Ellis. Given the limited significance of the Clarke statement, I conclude that its admission into evidence was harmless error.

In its opinion, the majority focuses on the role of the Clarke statement in meeting the government's burden of proving the pecuniary value element of the federal murder for hire statute. However, I believe that this element was easily established by evidence of Lee's complaint to Gordon about his "spending more money." Taken in context, the only reasonable interpretation of Lee's complaint was that he was referring to the cost of hiring Ellis's killer(s), not to the cost of purchasing marijuana or other drugs, because the entire conversation between Lee and Gordon prior to that specific complaint focused on arrangements for the shooting by Lee's associates of "[t]he kid who stabbed [Lee,]" *i.e.*, Ellis.

The majority concludes that "[w]ithout the Clarke testimony, there is absolutely no indication that the November 2001 car and gun incidents involved a hired killer." However, the Clarke statement does not directly connect those incidents to any hired killer. Indeed, no evidence in the record does so explicitly. Whatever might be said about the government's failure to produce more direct evidence of a conspiracy here, it is my view that the admission of the Clarke statement was harmless error because it added relatively little to the body of evidence presented to the jury.

concedes that "the Clarke statement standing alone, does not inculpate him." Indeed, as redacted, the statement neither refers to Lee by name, nickname, nor physical description. It is only when other evidence of Lee's participation in the murder-for-hire conspiracy is admitted that the Clarke statement inculpates Lee. Accordingly, Lee's *Bruton* argument is to no avail.

22

I also find defendants' other arguments unpersuasive, which the majority did not have to address because it concluded that the murder for hire conspiracy convictions should be vacated on the sole basis of the admission of the Clarke statement.

To begin, Williams argues that the District Court erred in admitting into evidence his statements to law enforcement officials because the government failed to disclose such statements to Williams pursuant to his request under Federal Rule of Criminal Procedure 16(a). "A district court's decision not to exclude evidence that was the subject of a Rule 16(a) violation is not grounds for reversal unless the violation caused the defendant 'substantial prejudice.'" *United States v. Salameh*, 152 F.3d 88, 130 (2d Cir. 1998) (noting that a district court has "broad discretion" in fashioning an appropriate remedy), *cert. denied sub nom.*, *Abouhalima v. United States*, 525 U.S. 1112 (1999). In his brief, Williams concedes that this evidence – consisting merely of his admission to agents of the Bureau of Alcohol, Tobacco and Firearms that he rented at least two cars at Newark Airport on November 7, 2001 and then gave the keys to those cars to unidentified individuals – was "merely cumulative" of other, properly admitted evidence. Moreover, the Government assured the District Court that it produced the evidence to Williams as soon as it became aware of its existence. However, Williams contends that "the admission of the statement undermined the credibility of [his] counsel" in the minds of the jurors because his counsel had told the jury in his opening statement that no such evidence would be presented at trial. While the circumstances of this Rule 16(a) violation are unfortunate, I cannot conclude that they rise to the necessary level of "substantial prejudice" to Williams's defense. *See Salameh*, 152 F.3d at 130.

23

Second, defendants argue that the District Court abused its discretion in admitting evidence of Lee's November 2001 conviction for armed robbery and Lee's and Williams's involvement in various drug transactions. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). With specific regard to evidence of prior bad acts admitted, as here, pursuant to Federal Rule of Evidence 404(b), we have adopted an "inclusionary approach" by which district courts are allowed to admit such evidence for any purpose other than to demonstrate the defendant's "criminal propensity." *Id.* (internal quotation marks omitted). I conclude that the District Court properly admitted evidence of Lee's conviction for armed robbery for the purpose of showing Lee's knowledge and/or absence of mistake in being a felon in possession of a firearm. *See, e.g.*, *U.S. v. Brown*, 961 F.2d 1039, 1042 (2d Cir. 1992) (per curiam). As for the evidence showing both defendants' involvement in various drug transactions, I conclude that the District Court properly admitted such evidence for the purpose of providing "an explanation to the jury of the close relationship . . . [among] Lee and Williams [and the cooperating witnesses, Lawton[2] and Gordon,] which was directly relevant to explaining why they would work together in any conspiracy to commit murder-for-hire." As the Government contends, "absent this testimony, . . . the jury would have been left with the highly distorted impression that Williams and Lee made their incredibly incriminating admissions about the murder plot to random individuals whom they had no reason to trust, and to whom, to their knowledge, had never themselves engaged in any kind of illicit behavior." *Cf. U.S. v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) ("Our decisions specifically approve the use of evidence of a defendant's prior narcotics dealings to

_____

[2] As noted, Lawton testified that Williams demanded that he return the gun that Williams provided him because Lee had been "bit," *i.e.*, stabbed.

24

delineate the background details of a conspiracy – to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.") (internal quotation marks and citations omitted), *abrogated on unrelated grounds by Florida v. White*, 526 U.S. 559 (1999). The District Court, moreover, instructed the jury on the limited purposes of such evidence. As such, I would not disturb the District Court's ruling on this issue.

Third, Williams argues that the admission of Lee's prior testimony from the criminal trial of Ellis, in which Lee described his confrontation with Ellis and the stabbing, violated Williams's Confrontation Clause rights under *Crawford v. Washington*, 541 U.S. 36 (2004). Due to Williams's failure to object to the admission of this evidence at trial and the supervening *Crawford* decision, we apply a "modified plain-error" rule in which "the government, not the defendant, bears the burden to demonstrate that the error was harmless." *United States v. Henry*, 325 F.3d 93, 100 (2d Cir. 2003) (internal quotation marks omitted), *cert. denied sub nom.*, *Panek v. United States*, 540 U.S. 907 (2003). Assuming without deciding that the admission of Lee's prior testimony violated Williams's Confrontation Clause rights after *Crawford*, such an error was harmless. Lee's prior trial testimony was admitted primarily to demonstrate that Lee was previously stabbed by Ellis and therefore had a motive to seek his murder for revenge. However, this proof was merely cumulative of other evidence showing that Lee had been stabbed by Ellis, a fact which was essentially uncontroverted. Among other proof, Lawton testified to this fact and Lee and Gordon discussed it in the recording made by Gordon. Lee's prior testimony was also admitted to establish Lee's prior armed robbery conviction and drug dealing. This was offered for the purpose of demonstrating Lee's knowledge and/or absence of mistake in being a

25

felon in possession of a firearm. As the knowing possession of a firearm is not an element of murder for hire conspiracy, Williams cannot complain of its admission.

Finally, Lee argues that the sentence imposed on him by the District Court was procedurally and substantively unreasonable. The Presentence Investigation Report calculated the guidelines range to be 262-327 months. Lee argues that the sentence imposed on him, 240 months, was procedurally unreasonable because the District Court "failed to articulate his consideration of all of the requisite 3553(a) factors in arriving at the maximum statutory sentence." However, we have held that no such articulation is necessary and that the District Court has fulfilled its obligation under § 3553(a) as long as "the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance . . . ." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005). *See also United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) (refusing to require any "robotic incantations" by a district court to demonstrate that it "consider[ed]" the § 3553(a) factors), *cert. denied*., *Crosby v. U.S.*, 127 S. Ct. 260 (2006). Lee has identified nothing in his sentencing hearing indicating that the District Court misunderstood the relevant factors he considered or misperceived any evidence that led to his decision.

As to the asserted substantive unreasonableness of his sentence, Lee argues that the District Court erred in failing to give him sufficient leniency due to his prior cooperation with the Bronx District Attorney's Office. However, in sentencing Lee, the District Court stated, "I accept what you've done with the Bronx D.A., I've accepted [] that you're trying to help . . . ," but the District Court also stated that the "seriousness of the offense" required him to give Lee a "just punishment". Given that the evidence in the record upon which the jury based its

26

conviction revealed a months-long conspiracy and multiple plans to locate and kill Ellis, I cannot conclude that the District Court imposed a substantively unreasonable sentence on Lee.

In sum, I have considered all arguments presented by Lee and Williams in this appeal and find them to be without merit. This includes those arguments considered and rejected by the majority opinion with which I concur for the reasons stated therein. Specifically, I concur with and join in the majority's opinion insofar it relates to both defendants' sufficiency challenges and Lee's Batson challenge, motion to sever, objection to the bifurcated trial, and ineffective assistance of counsel claim. For the foregoing reasons, I would affirm the judgment of the District Court.