**22-1247-cr**
*United States v. Fabian*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2025

Argued: September 29, 2025     Decided: March 25, 2026

Docket No. 22-1247-cr

———————

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

RAFAEL ANTONIO FABIAN,

*Defendant-Appellant.*[*]

———————

B e f o r e:

LIVINGSTON, *Chief Judge*, LYNCH, and MENASHI, *Circuit Judges.*

———————

———————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

Defendant-Appellant Rafael Antonio Fabian appeals from a judgment of conviction for distributing and possessing with intent to distribute crack cocaine. He was sentenced to 15 years in prison, well below the United States Sentencing Guidelines recommendation of life. Fabian challenges the sufficiency of the evidence to convict him, the district court's jury instructions, the reasonableness of his sentence, and the standard conditions of supervised release imposed upon him. For the reasons below, we conclude that the evidence was sufficient for the jury to have found Fabian guilty, the court's instructions to the jury were proper, and the sentence was reasonable. While this appeal was pending, however, we clarified that, at sentencing, a district court must make a defendant aware of standard conditions of supervised release that it intends to impose. It is undisputed that the district court did not do so in this case. Accordingly, we **AFFIRM** the district court's judgment except for the imposition of standard conditions of supervised release, which we **VACATE**. We thus **REMAND** the case to the district court for further proceedings consistent with this opinion.

―――――――

TIMOTHY P. MURPHY, Federal Public Defender's Office, Western District of New York, Buffalo, NY, *for* Defendant-Appellant.

AMY BUSA (Drew Rolle, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, New York, NY, *for* Appellee.

―――――――

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Rafael Antonio Fabian appeals from the May 26, 2022, judgment of conviction entered in the Eastern District of New York (Dora L. Irizarry, *J.*). Fabian was found guilty of conspiring to distribute and possess with

intent to distribute crack cocaine. Though the United States Sentencing Guidelines (the "Guidelines") recommended life imprisonment, the district court sentenced Fabian to 15 years.[1]

On appeal, Fabian challenges the sufficiency of the evidence to support the conviction, the instructions and guidance that the district court gave the jury, the procedural and substantive reasonableness of his sentence, and the standard conditions of supervised release imposed upon him. For the reasons below, we conclude that the evidence was sufficient to support the jury's verdict, the court's instructions to the jury were proper, and the sentence was reasonable.

While this appeal was pending, however, we clarified that, at sentencing, a district court must make a defendant aware of standard conditions of supervised release that it intends to impose. It is undisputed that the district court did not do so in this case.

Accordingly, we **AFFIRM** the district court's judgment except for the court's imposition of standard conditions of supervised release, which we

---

[1] Fabian was sentenced under the 2021 version of the Guidelines. Unless otherwise stated, all Guidelines references herein are to that version.

**VACATE**. We thus **REMAND** the case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

I. **Factual Background**

Fabian was arrested in March 2016, but the events precipitating Fabian's arrest began years earlier, when he began distributing drugs with co-defendant Carlos Suriel and the Drug Enforcement Administration (the "DEA") began investigating drug dealing in Sunset Park, Brooklyn, where Fabian and Suriel operated.

A. *Fabian and Suriel start working together, and Fabian supplies Suriel with increasing quantities of cocaine and heroin.*

In late 2013 or early 2014, Suriel, a low-level drug dealer wanting to scale up his operation, met Fabian, known to him as a high-level dealer, through Suriel's cousin, who was acquainted with Fabian. A few days later, Fabian put Suriel to the test, "giv[ing] [him] an opportunity" to sell half a kilogram of powder cocaine. Joint App'x 1034. Within a few days, Suriel and his relative, José Nunez, sold the cocaine, and Suriel paid Fabian roughly $19,000. Days later, Fabian upped the ante, doubling the cocaine he provided to Suriel. After selling

4

the cocaine, Suriel paid Fabian $38,000 and asked for more. Fabian obliged, giving Suriel another $38,000 worth of cocaine. Again, Suriel sold that cocaine before returning to Fabian to ask for more. Fabian obliged and supplied Suriel two kilograms of cocaine, through co-defendant Marino Antonio Canela. On at least one other occasion, Fabian gave Suriel another two kilograms of cocaine. On each occasion, Fabian provided the drugs on consignment.

At first, Suriel would distribute some of Fabian's cocaine to other drug dealers, who would then cook it into crack, which sold more quickly than powder cocaine. That practice benefited Fabian, as it helped Suriel repay him more quickly. As the volume of cocaine that Fabian supplied increased, Suriel started cooking the cocaine into crack himself, given the faster resale and greater profit margins.

Fabian knew that Suriel was cooking crack from Fabian's cocaine. Indeed, Fabian advised Suriel about how to cook the cocaine to maximize the yield. And when a supply drought led Fabian to procure cocaine from new, more sporadic sources, Suriel cooked cocaine in Fabian's presence to show him that the new sources were providing substandard product and that Suriel "was [not] robbing" him. *Id.* at 1097.

The cocaine drought opened the door for Suriel to get involved in Fabian's main "line of work"—heroin. *Id.* at 1069. After Suriel advised Fabian that he knew drug dealers who were interested in sampling Fabian's heroin, Fabian gave Suriel samples for distribution. Suriel shared with Fabian that the dealers' customers provided positive feedback and explained that he wanted "to work with him with the heroin." *Id.* at 1074. The next day, Fabian gave Suriel 600 grams of heroin (worth about $35,000) on consignment. Once he sold that heroin, Suriel asked for more, and Fabian gave Suriel another kilogram of heroin. During the cocaine drought, Fabian regularly supplied Suriel with heroin.

To track the money he owed Fabian, Suriel kept written records in a notebook detailing which customers owed him what. Fabian advised Suriel about his customers, expressing concerns about some of them.

B.      *Unbeknownst to Fabian and Suriel, the DEA begins investigating drug dealing in Sunset Park, leading to several arrests.*

Contemporaneously with the early days of Fabian and Suriel's relationship, the DEA began investigating drug dealing in Sunset Park, the site of Suriel's drug-dealing. The DEA received a tip from an informant that an individual named Luigi Pulice was willing to sell him drugs. On September 17,

2014, the DEA arranged a controlled purchase by the informant. DEA agents stealthily observed Pulice give cash to Nunez before meeting the informant and selling him 92.7 grams of crack cocaine, equivalent to about 1,500 individual uses. No arrest was made following the September controlled purchase.

The DEA planned another controlled purchase between the informant and Pulice on October 23, 2014, which led to Nunez's arrest. During surveillance of the planned purchase, the DEA again saw Nunez receiving cash from Pulice, in exchange for a white plastic bag containing crack cocaine.[2] Pulice then sought to sell the crack to the informant, but the informant, at the behest of the DEA, canceled the purchase because the delivery had taken nearly a full day. As a result, Pulice returned to Nunez's car and gave Nunez the drugs.

As Nunez drove off, DEA agents followed him. After a short chase, Nunez was apprehended. Agents recovered over 250 grams of crack cocaine from the bag. Nunez accused Pulice of planting the bag and indicated a willingness to cooperate. Nunez absconded, however, and the DEA lost his trail until a year

---

[2] That crack was cooked from powder cocaine that Fabian had provided to Suriel on consignment. Suriel had cooked the cocaine into crack in Fabian's presence to demonstrate that Fabian's new supply sources were providing substandard product.

later, when he was rearrested on October 7, 2015, at which point he began cooperating in earnest.

Pulice was arrested in May 2015, seven months after Nunez's first arrest. Then, on November 8, 2015, a seemingly unrelated incident in Texas led to Canela's arrest. Texas Highway Patrol stopped José Aponte-Díaz for speeding and, after searching his vehicle, discovered what appeared to be an illicit substance. The troopers seized Aponte-Díaz's vehicle and transferred it to the DEA, which discovered that the substance was approximately six kilograms' worth of heroin. Aponte-Díaz agreed to cooperate, and confirmed that the drugs were headed to New York. DEA agents in Texas coordinated with agents in New York to set up a controlled delivery of the drugs by Aponte-Díaz. The controlled delivery took place a few days later, leading to Canela's arrest and the seizure of several phones and a drug ledger.

Next up was Suriel, who was arrested on February 22, 2016. During the arrest, DEA agents seized from Suriel cash and drugs, as well as four phones. Suriel agreed to cooperate but did so for only three days. During his short-lived cooperation, Suriel messaged "his source of supply," a contact identified in his BlackBerry Messenger ("BBM") as "Alofoke Music." *Id.* at 844. In its review of

8

Suriel's BBM, the DEA found a text message from Alofoke Music indicating that Alofoke Music had gotten a speeding ticket on February 20, 2016. With the help of local police, the DEA identified a speeding ticket issued at the time and location referenced in the text. That speeding ticket ultimately led the DEA to Fabian, who was indicted on March 16, 2016, and arrested on March 28. When arrested, Fabian possessed seven phones and a black satchel, which contained drug ledgers in Suriel's handwriting.

## II.    The District Court Proceedings

### A.    Fabian's indictment and trial

The operative superseding indictment, which followed shortly thereafter, charged Fabian with a single count of conspiring with Suriel and Canela to distribute and to possess with intent to distribute at least 1 kilogram of heroin, at least 5 kilograms of cocaine, and at least 280 grams of crack cocaine, in violation of 21 U.S.C. §§ 841, 846.

At Fabian's trial in August 2019, the jury heard from 14 government witnesses, including Suriel and Nunez, who testified to most of the facts reported above. The jury also saw translations of incriminating Spanish-language text messages between Suriel and Fabian, recovered from Suriel's phone, and Suriel

9

testified to the contents of those messages. The government also called law-enforcement agents, who testified that the crack seized in the September 2014 sale to the informant and in the October arrest of Nunez—over 350 grams—was enough for approximately 5,500 individual uses.

At the close of the government's case, Fabian orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), arguing that the evidence presented was insufficient to establish his guilt, but the district court denied the motion.

### B.     *The jury deliberations and the jury notes*

The jury deliberated for two days before finding Fabian guilty. At the end of the first day, the jury wrote to the court with several requests. In one note, the jury asked for "Exhibits 204A and 205," the drug ledgers found in Fabian's satchel when he was arrested. *Id.* at 1908. In another note, the jury requested "Exhibit 407," which consisted of BBM phone records; asked about viewing Exhibit 506, an examination and photographs of Fabian's phone; and requested "any other exhibits that link Fabian, Alofoke Music, and [the specific] BBM PIN and phone number" in Exhibit 407. *Id.* at 1907. The latter request is at the forefront of this appeal.

In responding to the jury, the district court provided Exhibits 204A, 205, and 407; a portion of Exhibit 506 that the jury did not yet have; photocopies of items seized during Fabian's arrest; Department of Motor Vehicle records; and testimony from a detective on the case and from a BBM witness. The court reminded the jurors that they were "the sole deciders of the facts" and that their interpretation of the facts—not the court's or the attorneys'—"control[led]." *Id.* at 1773. The court did not use the word "link" in its response, or otherwise identify any of the material as showing a connection between Fabian and Alofoke Music or any BBM PIN or phone number.

The next day, the jury found Fabian guilty. The jury's special verdict revealed that it was satisfied that the government proved beyond a reasonable doubt that Fabian was part of a conspiracy involving at least 280 grams of crack cocaine. But the jury found that the government had not proven beyond a reasonable doubt that the conspiracy involved at least 1 kilogram of heroin or at least 5 kilograms of powder cocaine.

C.     *Fabian's post-trial motions*

After the jury's verdict, Fabian again moved for a judgment of acquittal, this time under Rule 29(c), repeating his contention that the government's

evidence was insufficient to prove his guilt as to the crack conspiracy and that, at best, the evidence established a buyer-seller relationship between Suriel and Fabian, as well as between their underlings.[3]

On September 28, 2020, the district court denied Fabian's Rule 29(c) motion via a text entry in the docket. A written opinion followed on April 11, 2022.

### D. Fabian's sentencing

At sentencing, the district court concluded that Fabian's base offense level was 36, as calculated by the United States Probation Office in Fabian's Presentence Investigation Report (the "PSR").[4] The court considered the cocaine and heroin trafficked as part of the conspiracy to be conduct relevant to the conviction, because Fabian's "involvement in both . . . was proven way beyond a

---

[3] In the alternative, Fabian sought a new trial under Rule 33. The district court denied that motion, and Fabian does not appeal that denial. The basis for that motion was Fabian's trial counsel's alleged ineffective assistance under the Sixth Amendment given counsel's failure to present Fabian's brother-in-law as a witness to rebut Suriel's claims about the drug ledgers. Because Fabian does not appeal that aspect of the district court's decision, we need not address the issues raised in the Rule 33 motion.

[4] The PSR was prepared pursuant to the 2018 Guidelines. The district court sentenced Fabian under the 2021 Guidelines, as it had to by the time of sentencing. None of the differences between the 2018 and 2021 versions are material here.

preponderance of the evidence." *Id.* at 2513. The court added a two-point enhancement under Guidelines § 2D1.1(b)(16)(C) and (E), finding that Fabian was directly involved in the importation of drugs and that he engaged in the offense as part of his livelihood; a two-point obstruction-of-justice enhancement under Guidelines § 3C1.1 for Fabian's attempt to dissuade Nunez from testifying; and a four-point aggravating-role enhancement under § 3B1.1(a).[5] Thus, the court found that Fabian's total offense level was 44, with a criminal history category of I, which yielded a Guidelines recommendation of life in prison.

Fabian objected to the court's calculations. He invited the court to consider both a then-pending and since-enacted Guidelines amendment stating that acquitted conduct was not "relevant conduct" for purposes of Guidelines § 1B1.3 (Amendment 826) and the provisions of a proposed but unenacted bill, the Eliminating a Quantifiably Unjust Application of the Law Act (the "EQUAL Act"), which would have eliminated the more punitive treatment of offenses involving crack cocaine as compared to those involving powder cocaine.[6] The

---

[5] On appeal, Fabian does not challenge the obstruction-of-justice and aggravating-role enhancements.

[6] Fabian also invited the district court to consider the Acquitted Conduct Act, which is still pending but which would do exactly what Amendment 826 does.

court declined, as neither Amendment 826 nor the EQUAL Act had been enacted at the time.

Although the Guidelines recommended a sentence of life in prison, the court sentenced Fabian to 15 years in prison and 5 years of supervised release, noting his health concerns but emphasizing the "extensive, impactful narcotics trafficking conspiracy that [Fabian] was involved in as a leader" and "as a supplier of suppliers." *Id.* at 2551. The court then orally imposed several special conditions of supervised release. The judgment included the "standard" conditions of supervised release included in Guidelines § 5D1.3(b)(2), which had not been pronounced at sentencing.

This appeal followed.

## DISCUSSION

On appeal, Fabian argues that the evidence presented to the jury was insufficient for the jury to find him guilty of conspiring to distribute crack cocaine and at worst evinced a buyer-seller relationship between Suriel and Fabian, that the district court erred in its jury instructions, that the sentence imposed was

*See* Prohibiting Punishment of Acquitted Conduct Act of 2023, S. 2788, 118th Cong. For that reason, and because Fabian's brief primarily focuses on Amendment 826, we focus our discussion on Amendment 826.

14

unreasonable, and that the court erred when imposing the standard conditions of supervised release. Only the last argument has merit.

## I. The Evidence Was Sufficient to Convict Fabian of Conspiring to Distribute Crack Cocaine.

First, Fabian argues that the evidence presented by the government was insufficient to establish his guilt of conspiracy to distribute crack cocaine and that, at worst, he was in a buyer-seller relationship with Suriel. He is wrong.

Although we review sufficiency of the evidence claims *de novo*, to succeed on such a claim, the defendant "bears a heavy burden." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009). "[W]e view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Allah*, 130 F.3d 33, 45 (2d Cir. 1997). We must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, "[i]n cases of conspiracy, deference to the jury's findings 'is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision

15

of a surgeon's scalpel.'" *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004) (omission in original), quoting *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992).

The operative question is thus whether a rational jury could have found Fabian guilty beyond a reasonable doubt of conspiring to distribute crack cocaine under 21 U.S.C. §§ 841, 846. To establish that Fabian was guilty under those subsections, the government had to establish beyond a reasonable doubt that Fabian "agree[d] [with] two or more persons to" distribute or to possess with intent to distribute crack cocaine. *United States v. Cepeda*, 768 F.2d 1515, 1516 (2d Cir. 1985).

The government put forth robust evidence of Fabian's involvement in the crack cocaine conspiracy, presenting numerous witnesses—including Suriel, Nunez, and law enforcement agents—alongside other evidence such as surveillance, phone records, and incriminating text messages. Suriel was the key witness, testifying that Fabian "g[a]ve [him] an opportunity" to distribute drugs with Fabian, regularly supplying him with kilograms of powder cocaine on consignment (and at least once gratuitously supplying twice the amount requested). Joint App'x 1034. Fabian not only knew that Suriel was cooking the

cocaine into crack—which sold faster and at a greater profit margin than powder cocaine, thereby resulting in faster repayment to Fabian—he also advised Suriel, a crack-cooking novice, on how to cook the powder into crack, and was present at least once when Suriel cooked powder cocaine that he supplied.[7] On that occasion alone, Fabian watched Suriel cook enough crack for more than 4,000 individual uses.

Suriel's testimony was buttressed by incriminating text messages between Suriel and Fabian. In texts from February 2016, Suriel repeatedly asked Fabian for cocaine, and even demanded a discount, explaining that his customers were "always complaining about prices." *Id.* at 1249. After Fabian provided the cocaine, Suriel texted Fabian that he "cooked" it and that it was "fire." *Id.* at 1971. Fabian ordered Suriel not to "pass [the cocaine along] to anyone" on credit. *Id.* at 1969. Moreover, Fabian chided Suriel for "always [coming up] with the same story"—that Suriel had not collected enough money from his customers—when it came time to pay. *Id.* at 1986. The evidence thus amply supported the conclusion that Fabian knew that Suriel was distributing to other purchasers the cocaine that

---

[7] The crack that Fabian saw Suriel cook was the same crack that the DEA recovered from Nunez when they arrested him in October 2014.

Fabian supplied.

Fabian's counterarguments are unavailing. First, his primary counterargument is that he was simply in a buyer-seller relationship with Suriel, not in a conspiracy, and therefore that the district court plainly erred by not instructing the jury on the buyer-seller exception to a conspiracy. To show plain error in the lack of instruction, Fabian must, as a threshold matter, show that the district court committed a "clear and obvious" error "that affected his substantial rights." *United States v. Dennis*, 132 F.4th 214, 235–36 (2d Cir. 2025). But Fabian is unable to show any error, let alone plain error.

Fabian's argument is rooted in the principle that a conspiracy to distribute narcotics cannot be predicated simply on an agreement between a buyer and a seller to engage in a purchase by the former from the latter. Although a buyer and seller agree on a particular sale of drugs, to treat such an agreement as a conspiracy would, in effect, subject the buyer to the penalties attendant to selling illicit substances, and upset the hierarchy of punishment that penalizes more heavily one who traffics in such substances than one who only buys, possesses, and uses them. *See United States v. Parker*, 554 F.3d 230, 234–35 (2d Cir. 2009); *United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018); GORDON MEHLER, JOHN

GLEESON, DAVID C. JAMES & ALICYN COOLEY, FEDERAL CRIMINAL PRACTICE: A SECOND CIRCUIT HANDBOOK § 46-6 (2025); JANICE HOLBEN, ALAN J. JACOBS & ANNE E. MELLEY, NATIONAL LEGAL RESEARCH GROUP, INC., 25 AMERICAN JURISPRUDENCE 2D DRUGS AND CONTROLLED SUBSTANCES § 150 (2025). It is well established that the principle is no obstacle to finding a conspiracy between a drug wholesaler and smaller retail dealers he supplies. *See Parker*, 554 F.3d at 238–39; *United States v. Thompson*, 76 F.3d 442, 454 (2d Cir. 1996). Whether the retail dealers consider themselves employees of the wholesaler or independent operators makes no difference; if the wholesaler has a stake in the ongoing dealings of the retailers he supplies, he can be found to have conspired with them to distribute narcotics to their customers. *See Parker*, 554 F.3d at 235–36.

Contrary to Fabian's argument, this case is the type of case in which a district court need not instruct the jury on the buyer-seller exception. There was "prolonged cooperation," "mutual trust," and "standardized dealings" between Fabian and Suriel. *Dove*, 884 F.3d at 151 (internal quotation marks omitted). Moreover, Fabian provided Suriel, on consignment, "wholesale quantities of [cocaine] . . . plainly not intended for personal use." *Id.* Indeed, the volume of crack seized by the DEA as part of the planned controlled purchases in

19

September and October 2014 alone would have sufficed for more than 5,500 individual uses. As a law-enforcement agent testified, such volume would "[a]bsolutely not" "be for individual use" but rather "[f]or distribution." Joint App'x 1428–29. And the seized crack is merely a fraction of Suriel's crack sales flowing from cocaine supplied by Fabian—sales that Fabian was aware of and had a financial "stake in." *Parker*, 554 F.3d at 236. Moreover, Fabian gave Suriel advice and directives on how to conduct his business to their mutual advantage, instructing him on methods of making crack from powder cocaine, vetting his customers, and telling him not to extend credit. The evidence is therefore overwhelming that Fabian and Suriel "shared a conspiratorial purpose to advance other transfers" by Suriel. Thus, there was no factual basis for a buyer-seller instruction, and the district court did not err by not giving one. *Id.* at 235.

Second, Fabian argues throughout his briefing that the linchpin of the government's case was the testimony of Suriel and Nunez, but those witnesses had good reason to implicate others "to avoid lengthy prison terms." Appellant's Br. 29. But Fabian raised those same arguments to the jury, who rejected them. *See* Joint App'x 591 (asserting that the jurors would "be amazed" to hear "about the people that the government has lied down in bed with"); *id.* at 592 (calling

20

Suriel and Nunez "snitches"). We do not "'second-guess a jury's credibility

determination on a sufficiency challenge,' particularly when, as is the case here,

trial counsel already presented these same credibility arguments to the jury."

*United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018), quoting *United States v.*

*Florez*, 447 F.3d 145, 156 (2d Cir. 2006).[8]

Finally, Fabian points to types of evidence that the government did not

offer, and contends that the absence of such evidence exonerates him. In doing

so, he misses the point: The operative question is whether the evidence *in* the

record was sufficient to permit a rational jury to find him guilty beyond a

reasonable doubt as to the crack conspiracy. *See United States v. Harvey*, 746 F.3d

---

[8] Fabian contends, moreover, that the jury's verdict, convicting him of the crack conspiracy but not the powder cocaine and heroin conspiracies, was "an irrational (compromise) verdict." Appellant's Br. 21. Even assuming that this challenge is cognizable, there is no evidence that the jury reached its verdict "by means other than a conscientious examination of the evidence." *Maher v. Isthmian Steamship Co.*, 253 F.2d 414, 416 (2d Cir. 1958). The only drugs in evidence tied to Fabian by robust witness testimony was the crack seized in September and October 2014, which was directly tied to Nunez. Moreover, the amount of crack cocaine in evidence—over 350 grams—was sufficient to convict Fabian on the crack, but not the powder, cocaine conspiracy as charged in the indictment (requiring only 280 grams or more of crack cocaine but 5 kilograms or more of cocaine). Finally, although law enforcement seized approximately six kilograms of heroin when they arrested Canela, the witness testimony connecting Fabian to that seizure was far less robust. Canela did not testify at all, and neither Suriel nor Nunez testified about the heroin seizure.

87, 89 (2d Cir. 2014). For the reasons discussed above, it was. Accordingly, Fabian's arguments about what the government did not produce—drug-related text messages from any of the eight phones found in his possession during his arrest, drugs or drug paraphernalia found in his possession during his arrest, bank accounts or real property seized, secret compartments in his vehicles, and drug ledgers written by him—are red herrings. The jury was entitled to consider whether the absence of such evidence undermined its confidence in the force of the inculpatory evidence—and was entitled to decide that it did not. Similarly, Fabian is right that there is no evidence in the record that he personally sold crack. That is because the government does not allege that he did; the government alleges that he sold powder cocaine that he knew would be cooked into crack and resold, assisted and advised the person who processed the powder cocaine and sold it, and benefited from its sale.

Thus, viewing the evidence most favorably to the government, a rational jury could have found beyond a reasonable doubt that Fabian had a financial stake in Suriel's crack sales; that Suriel in turn followed Fabian's direction and benefited from his instruction and advice; and, thus, that Fabian conspired with Suriel to distribute crack cocaine.

## II. The District Court's Response to the Jury's Note Was Proper.

As recounted above, the jury requested several exhibits, including "exhibits that link[ed] Fabian, Alofoke Music, and [the specific] BBM PIN and phone number" at issue. The court provided all requested exhibits simultaneously and, in addition, testimony contextualizing them. The court did not explicitly address whether the evidence "linked" Fabian to any particular entry in Suriel's contacts. Fabian asserts that the district court erred in several ways in responding to the jury, but all his arguments fail.

Because Fabian objected below, we review the district court's response, which did not involve an interpretation of law, for "abuse of discretion." *United States v. Khalupsky*, 5 F.4th 279, 294–95 (2d Cir. 2021). A district court may "summarize and comment upon the evidence and inferences to be drawn therefrom . . . to assist the jury in winnowing out the truth from the mass of evidence, much of it conflicting, and perhaps placed out of focus by different claims concerning its meaning and interpretation by the arguments of the parties." *United States v. Tourine*, 428 F.2d 865, 869 (2d Cir. 1970); *see also Kotler v. Jubert*, 986 F.3d 147, 157 (2d Cir. 2021) (holding that the district court did not deny the defendant "a fair trial" when it "asked witnesses questions," and "limited

[the] questioning of a witness," in order to "clarify and organize information for the jury"). Yet the court must not "try to impose [its] own opinions and conclusions as to the facts on the jury" or "act as an advocate in advancing factual findings of [its] own." *Tourine*, 428 F.2d at 869. We evaluate the court's decisions "in the context of the whole trial record," *id.*, and reverse only if the district court committed "prejudicial error." *United States v. Aina-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003). An error is prejudicial if "there is a 'reasonable probability' that the error affected the outcome of the proceeding." *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020), quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

First, Fabian complains that the court erred in responding to the jury's request for evidence linking Fabian to certain (incriminating) evidence "without *affirmatively* repudiating the 'link' premise." Appellant's Reply Br. 11 (emphasis in original). By responding as it did, according to Fabian, the court injected itself into the jury deliberations and endorsed the idea that he was guilty.

Fabian is wrong, and the court's response was more than adequate under the circumstances. The court reminded the jurors that their recollection of specific testimony "control[led]" and that they were "the sole deciders of the facts." Joint

24

App'x 1773. They, alone, were to "review . . . the evidence and . . . determin[e] . . . the facts." *Id.* And the court did not suggest that it was providing "linking" evidence; it instead responded to several jury notes simultaneously, providing the evidence in one batch.

Fabian suggested two alternatives—first, asking the jury to clarify the meaning of the notes by making specific evidentiary requests or, second, sharing all admitted exhibits to the jury. As to the first option, the court was reasonably "loath[]" to ask the jury to "clarify" notes, out of fear of "intrud[ing] into [the jury's] deliberative process." *Id.* at 1732. As to the second, the court could reasonably have hesitated to provide irrelevant information that could have misled the jury. *See Hamling v. United States*, 418 U.S. 87, 127 (1974) (noting that a district court "retains considerable latitude even with admittedly relevant evidence in rejecting that which is cumulative, and in requiring that which is to be brought to the jury's attention to be done so in a manner least likely to confuse that body"). Although a different court may have opted to proceed with one of Fabian's alternatives, that does not render this district court's decision

unreasonable.[9]

In any event, Fabian cannot show that he was prejudiced. Though "[i]t is difficult to speculate upon what the jury may have made of the court's response," *United States v. Mejia*, 356 F.3d 470, 477 (2d Cir. 2004), there is no reason to think that the jury would have read it (and for that matter its own question) as doing anything more than simply providing (or requesting) the evidence that the government relied on for its argument that the designated identifiers referred to Fabian. Nothing in the record suggests that the response was a "potent influence" on, or "'the decisive word'" to, the jury. *United States v. Kopstein*, 759 F.3d 168, 172–73 (2d Cir. 2014), quoting *Tart v. McGann*, 697 F.2d 75, 77 (2d Cir. 1982).

Second, Fabian argues that the district court erred by providing the jury with more evidence than it specifically requested. But the additional evidence contextualized the evidence that was directly responsive. And a court is well within its discretion to "have the jury review other evidence relating to the same

_____

[9] Fabian also contends that the district court's "silence on the word 'link' sp[oke] volumes." Appellant's Reply Br. 11. As discussed, the court was far from silent, reminding the jury of the particular importance of its role. Moreover, a court's silence "is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

factual issue" as that about which the jury asked. *United States v. Gentile*, 525 F.2d 252, 260–61 (2d Cir. 1975) (internal quotation marks omitted). "[R]eversal for submitting material in addition to that requested is required only where the submission might indicate, or be fairly taken by the jury to indicate, prejudice of the judge against the defendant, as, [for example], when the judge insist[s] on submitting evidence favorable to the prosecution that [i]s in no way germane to the request, or when it leads to a biasing of the record." *Id.* at 261. That is not the case here.

Fabian himself acknowledged both in the district court and on appeal that the evidence the district court provided was germane to the jury's request. Nonetheless, he asserts that, by providing the additional germane evidence the court impermissibly "interpret[ed] and marshal[ed] evidence" and, in so doing, intruded onto "the jury's domain to evaluate the evidence." Appellant's Br. 40. But, as discussed above, the court's response, far from demonstrating prejudice, was fair and reminded the jury of the singular importance of its role. In so doing, the response reflected thoughtful consideration and deft navigation of the challenging issues before the court and is certainly no abuse of the "considerable discretion" the court is entitled to. *United States v. Rommy*, 506 F.3d 108, 126 (2d

Cir. 2007); *see also Khalupsky*, 5 F.4th at 295 ("District courts are significantly better situated than we are to interpret cryptic jury notes, and they accordingly 'enjoy[] considerable discretion in construing the scope of a jury inquiry and in framing a response tailored to the inquiry.'" (alteration in original) (quoting *Rommy*, 506 F.3d at 126)). The response did not opine on guilt or facts but, rather, supplied materials for the jury's independent evaluation. *See United States v. Natale*, 526 F.2d 1160, 1169 (2d Cir. 1975).

Thus, the district court did not abuse its discretion in responding to the jury. In light of the court's carefully curated and entirely appropriate response, we will not manufacture error when none exists.

## III.    The District Court's Sentence Was Reasonable.

Fabian next argues that the district court's 15-year prison sentence—in the face of a Guidelines recommendation of life—was both procedurally and substantively unreasonable. Neither argument is persuasive.

Generally, sentencing issues are reviewed on appeal for both procedural and substantive reasonableness. *See United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008). That "amounts to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). "A district court abuses its

discretion if it makes 'an error of law or a clear error of fact.'" *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017), quoting *Abascal v. Fleckenstein*, 820 F.3d 561, 564 (2d Cir. 2016). And a clear error is one not "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### A.     *Procedural reasonableness*

Fabian argues that the district court procedurally erred because it (1) failed to properly consider the 18 U.S.C. § 3553(a) factors and Amendment 826, concerning relevant conduct for sentencing; (2) attributed more drug weight than it should have under the Guidelines; and (3) improperly imposed a criminal-livelihood enhancement.

"A district court commits procedural error where it fails to calculate the Guidelines range . . . , makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory"; where it "does not consider the § 3553(a) factors"; or where it "rests its sentence on a clearly erroneous finding of fact." *Cavera*, 550 F.3d at 190.

First, contrary to Fabian's claim, the district court properly considered the § 3553(a) factors. Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary" to satisfy certain sentencing goals. Those goals

include "reflect[ing] the seriousness of the offense, . . . promot[ing] respect for the law, and . . . provid[ing] just punishment"; "afford[ing] adequate deterrence"; "protect[ing] the public"; and rehabilitating the defendant. 18 U.S.C. § 3553(a)(2). In addition, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; guidance from the United States Sentencing Commission; "the need to avoid unwarranted sentence disparities among [similarly situated] defendants"; and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a). The court need not "make specific findings with respect to any or all of the factors listed in . . . § 3553(a)." *United States v. Velasquez*, 136 F.3d 921, 924 (2d Cir. 1998). Moreover, absent "record evidence suggesting otherwise, we presume that the district court has faithfully discharged its duty to consider the § 3553(a) factors." *United States v. Carr*, 557 F.3d 93, 107 (2d Cir. 2009).

In this case, the district court provided a thorough and thoughtful explanation for its sentence. It focused on "provid[ing] just punishment," noting, as aggravating factors, that Fabian led a "sophisticated" and "very large and extensive, impactful narcotics trafficking conspiracy" and was a "supplier of suppliers." Joint App'x 2550–51. The court also acknowledged, as mitigating

30

factors, Fabian's "health conditions," which had exacerbated the already "very harsh conditions of incarceration" that he faced, and Fabian's rehabilitation, citing his work while on bail and positive comments from prison staff. *Id.* at 2552. As a result, the court concluded that the Guidelines recommendation of life was "overly harsh." *Id.* at 2554. Nonetheless, the court concluded that the statutory minimum of ten years did not "adequately reflect[] the seriousness of [Fabian's] offense." *Id.* The court thus sentenced him to 15 years' imprisonment. Therefore, the record reflects that the district court provided a well-reasoned account of why its sentence accorded with the § 3553(a) factors.

Fabian counters that the district court failed to consider "the *principles* behind [Amendment 826] . . . under [the just-punishment principles of] § 3553(a)(2)(A)." Appellant's Br. 53 (emphasis in original). But the court did consider those principles. *See* Joint App'x 2503 (noting that the court "reviewed what little it could find in connection with the [Acquitted Conduct Act (which is substantially similar to Amendment 826)]," including the Senate bill and a press release). Moreover, the court was not required to consider those principles at all, as Amendment 826 had not yet been enacted. The court applied the Guidelines as they existed at sentencing, which is all it had to do. *See United States v. Colon*, 961

31

F.2d 41, 45 (2d Cir. 1992) (noting that a court is not "expected to anticipate" or divine possible post-sentencing changes to the Guidelines); Guidelines § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

Second, Fabian asserts procedural error in the district court's calculation of the drug weight attributable to him for sentencing purposes. Attribution of drug quantities to a defendant at sentencing requires "[s]pecific evidence," such as "drug records, admissions or live testimony." *United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir. 1993). Under the then-operative Guidelines, the court could consider "all information adduced during trial, including acquitted conduct," so long as the court found that Fabian committed the conduct by a preponderance of the evidence. *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008); *see also United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). That is exactly what happened.

The district court found that the evidence "produced at trial concerning [Fabian's] involvement in both heroin trafficking and powder cocaine trafficking

. . . was proven way beyond a preponderance of the evidence." Joint App'x 2513. Fabian reiterates the same arguments he raised concerning the sufficiency of the evidence—that the jury acquitted him of the powder cocaine and heroin conspiracies and that the testimony of Suriel and Nunez was incredible—which we reject here for the same reasons. "[W]e owe a district court deference with respect to factual findings, especially those based on witness credibility." *United States v. Nuzzo*, 385 F.3d 109, 118 (2d Cir. 2004). After all, the court that "presided over the trial" is "in the best position to assess the credibility of the witnesses." *United States v. Norman*, 776 F.3d 67, 78 (2d Cir. 2015). Accordingly, the district court did not abuse its substantial discretion by relying on the testimony of Suriel and Nunez to calculate the drug weights attributable to Fabian for sentencing purposes.

Finally, Fabian argues that the district court procedurally erred by applying the criminal-livelihood enhancement under Guidelines § 2D1.1(16). When, as here, "a defendant has preserved a challenge to a sentencing enhancement, we apply a mixed standard of review to assess whether the district court properly applied the enhancement." *United States v. Esteras*, 102 F.4th 98, 104 (2d Cir. 2024). "We first review the district court's factual findings for clear

33

error, which we will find only where the record as a whole leaves us 'with the definite and firm conviction that a mistake has been committed.'" *Id.*, quoting *United States v. Cuevas*, 496 F.3d 256, 267 (2d Cir. 2007). "We then review *de novo* the district court's ultimate legal determination as to whether those factual findings support an enhancement under the Guidelines." *Id.* "With respect to the application of a specific sentencing enhancement, 'we give due deference to the district court's application of the Guidelines to the facts.'" *United States v. Pope*, 554 F.3d 240, 245 (2d Cir. 2009), quoting *United States v. Sicurella*, 367 F.3d 82, 85 (2d Cir. 2004).

Guidelines § 2D1.1(16)(E) provides a 2-level enhancement to the defendant's base offense level if "[t]he defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." For purposes of § 2D1.1(b)(16)(E), "pattern of criminal conduct" means "planned criminal acts occurring over a substantial period of time." Guidelines § 4B1.3, cmt. 1. And "engaged in as a livelihood" means that "the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law" and that drug dealing "was the defendant's primary occupation in that twelve-month period."

34

*Id.*, cmt. 2. A court may "infer a defendant's financial gain from the direct and circumstantial evidence in the record." *United States v. Pristell*, 941 F.3d 44, 53 (2d Cir. 2019). Moreover, a court may consider "a defendant's inability to verify purported legitimate employment" and may reasonably impute drug earnings onto the defendant. *Id.*

Here, based on a $7.25 federal hourly minimum wage, the district court was entitled to infer that Fabian made significantly more than $14,500 annually throughout the conspiracy. In just one transaction, Fabian sold Suriel one kilogram of cocaine for $38,000. A week later, Fabian sold Suriel another kilogram. Fabian then sold Suriel at least another two kilograms soon thereafter. Each delivery exceeded the $14,500 threshold. Moreover, Fabian was unable to verify legitimate gainful employment during the drug-dealing period.[10] Fabian counters that "[t]he jury was provided with scarce information about [his] employment background and his sources of income," other than "the word of

---

[10] Though Fabian claims that he worked at a family member's deli from 2014 to 2015, he could not recall the deli's name. Fabian also claims that, at the time of sentencing, his family was assisting him and that he was unable to pay a fine. But that does not speak to his income at the time of the conspiracy. And, finally, Fabian fails to explain why the fact that the enhancement is infrequently imposed matters.

two discredited informants," who testified that Fabian "deal[t] drugs regularly." Appellant's Br. 70–71. Again, however, we owe the district court substantial deference with respect to its factual findings at sentencing, especially those based on the credibility of witnesses that it observed firsthand at trial. *See Nuzzo*, 385 F.3d at 118; *Norman*, 776 F.3d at 78.

Thus, the district court's sentence was not procedurally unreasonable.[11]

B. *Substantive reasonableness*

Fabian next contends that the district court committed substantive error in sentencing him for reasons similar to the reasons he contends the court committed procedural error. According to him, the sentence was substantively unreasonable because the court (1) failed to reduce the sentence in light of Amendment 826; (2) failed to reduce the sentence despite having attributed more drug weight to him than it should have under the Guidelines; and (3) sentenced him in accordance with the differential treatment of crack and powder cocaine under the Guidelines, with its concomitant deleterious racial impact. None of

---

[11] Fabian also challenges the district court's imposition of the enhancement based on a finding that he "was directly involved in the importation of a controlled substance." Guidelines § 2D1.1(16)(C). Because the criminal-livelihood finding is sufficient, standing alone, to support the enhancement, *see id.* § 2D1.1(16), we need not consider the court's importation finding.

those arguments has merit.

"[O]nce we are satisfied that the district court complied with . . . *procedural* requirements," "[w]e will . . . set aside [the] court's *substantive* determination only in exceptional cases where the [district] court's decision 'cannot be located within the range of permissible decisions.'" *Cavera*, 550 F.3d at 189 (emphasis in original), quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007). In other words, we will reverse only rare "cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). Moreover, reversal due to substantive unreasonableness is even rarer when the court imposes a sentence within (or, as here, substantially below) the Guidelines range. *See Rita v. United States*, 551 U.S. 338, 347 (2007) (concluding that a sentence within the Guidelines range reflects the "double determination" of "the sentencing judge and the Sentencing Commission" that a given sentence is proper and that this "double determination significantly increases the likelihood that the sentence is a reasonable one"). The question in those cases is whether the sentence "'shock[s] the conscience,' constitutes a 'manifest injustice,' or is

otherwise substantively unreasonable." *United States v. Lyle*, 919 F.3d 716, 738 (2d Cir. 2019) (alteration in original), quoting *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015).

Here, Fabian falls far short of meeting his burden to show substantive unreasonableness. Despite facing a Guidelines recommendation of life in prison, Fabian was sentenced to only 15 years, well below both the Guidelines recommendation and the statutory maximum, and not dramatically higher than the *lowest* sentence that could legally be imposed, notwithstanding that the offense involved additional types and amounts of drugs well beyond the quantity of crack that sufficed to trigger that minimum sentence. We may thus presume that his sentence was substantively reasonable. *See Rita*, 551 U.S. at 347. And nothing about his sentence can be said to "'shock[] the conscience'" or to "constitute[] a 'manifest injustice.'" *Lyle*, 919 F.3d at 738, quoting *Aldeen*, 792 F.3d at 251. The sentence is far from "shockingly high[] . . . or otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123.

Fabian's three substantive challenges work in tandem. Operating under the assumptions that the jury acquitted him of the powder cocaine and heroin conspiracies and therefore that the district court could only sentence him on the

crack cocaine conspiracy, Fabian contends that the court's miscalculation of the crack cocaine attributable to him for sentencing purposes and its different treatment of that crack cocaine (as compared to powder cocaine) had grave consequences. Had he only been sentenced for the crack cocaine seized, on an equal footing as powder cocaine, Fabian asserts that the Guidelines would have recommended a range of 33 to 41 months in prison.

Fabian makes too many assumptions. We have already rejected his first assumption—that the district court could not consider his involvement in the powder cocaine and heroin conspiracies that he was allegedly acquitted of. *See supra* § III.A. That causes the rest of Fabian's argument, as to the proper amount of crack cocaine attributable to him and the improper sentencing disparities between crack and powder cocaine, to crumble. Moreover, a district court need not "address the sentencing disparity between crack and powder cocaine." *United States v. Lawrence*, 139 F.4th 115, 121–22 (2d Cir. 2025). That is especially true here, given that there are no other legitimate claims of error and the district court's sentence was well below the Guidelines range.

Thus, Fabian's sentence was substantively reasonable.

## IV. The Court Failed to Pronounce the "Standard" Conditions of Supervised Release Included in the Judgment.

Finally, Fabian is correct that the district court imposed standard conditions of supervised release that the court must reevaluate in light of our decision in *United States v. Maiorana*, 153 F.4th 306 (2d Cir. 2025) (en banc).[12]

"'[W]hether the spoken and written terms of a defendant's sentence differ impermissibly' presents a question of law that we review *de novo*." *See United States v. Rosado*, 109 F.4th 120, 123–24 (2d Cir. 2024), quoting *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018).

"Federal Rule of Criminal Procedure 43(a)(3) requires that a defendant be present at sentencing." *Id.* at 124. Thus, *Maiorana* held "that a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in § 5D1.3(c) [of the Guidelines], must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment." 153 F.4th at

---

[12] Fabian raised the *Maiorana* challenge via emergency motion, consistent with Rule 27(a)(1) of the Federal Rules of Appellate Procedure, which requires "[a]n application for an order or other relief [to be] made by motion" specifying the grounds for relief. By its terms, *Maiorana* "appl[ies] to future cases and cases [then] on direct review," such as this one. 153 F.4th at 314 n.11.

314. Though the court need not "read the full text of every condition on the record[,] . . . it must, at the very least, . . . expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court." *Id.*

Here, the court imposed standard conditions of supervised release on Fabian via the written judgment without pronouncing them, or otherwise making him aware of them, at sentencing. Because the added conditions are "non-mandatory" and were neither orally pronounced at sentencing nor previously "set forth in writing and made available to [Fabian]," the district court erred in adding the conditions to the written judgment. *Id.* The government agrees that we "should remand this matter to the district court with instructions to vacate this portion of the judgment and then address the conditions that were not properly imposed pursuant to *Maiorana*." Dkt. 171, at 1.

Thus, we remand this matter to the district court "to address the [standard] conditions of supervised release." *Maiorana*, 153 F.4th at 315 n.13. If the district court intends to reimpose the conditions in a new judgment, the court must either recite the conditions to Fabian or direct him to a written copy of the

41

conditions and expressly adopt the conditions as set forth in the written copy, and give him the opportunity to object to any conditions he believes should not be imposed. *See id.* at 314. Alternatively, the court may decline to reimpose the conditions, in which case "it may simply strike them from the judgment." *Id.* at 315.

## CONCLUSION

We have considered the parties' other arguments and conclude that they are without merit. Thus, for the foregoing reasons, we **AFFIRM** the district court's judgment except for the court's imposition of standard conditions of supervised release, which we **VACATE**. We thus **REMAND** the case to the district court for further proceedings consistent with this opinion.